FRANK VS. AVERY.

*Change of Venue: impossibility of obtaining impartial trial—Pleading.*

1. A party asking a change of venue on the ground of his inability to obtain an impartial trial in the county where the action is pending, must clearly establish such inability ; and this must be done by proof of *facts* and *circumstances* from which the court can determine for itself that the application is well founded.

2. Where the judgment in such a case is appealed from on the ground that the court erroneously refused such change of venue, the fact that an unexceptionable jury was in fact readily impanneled in the cause, is entitled to considerable weight in the appellate court.

3. Under an averment that an injury was "*wrongfully* and maliciously" inflicted, proof that it was done *negligently* is admissible.

APPEAL from the Circuit Court for *Jefferson* County.

An action for personal injuries, which, it is alleged, the defendant wronfully, willfully and maliciously inflicted upon and caused the plaintiff. Answer, in denial. After eleven jurors had been called, defendant was permitted, by stipulation, to move for a change of venue; and did so upon affidavits of himself and one Perry. Defendant's affidavit, beside showing merits, stated, in substance, that the plaintiff, in June, 1865, and soon after the alleged injuries, instituted a criminal action against affiant before a justice of the peace, for an assault and battery, based upon the same facts as the present suit; that defendant was acquitted; that at the subsequent September term of the court, this cause being on the calendar for trial, and again at the present term, plaintiff went before the grand jury and endeavored to procure an indictment against affiant for an assault with intent to kill, based on the same facts; that affiant believes this was done to prejudice the minds of the people of the county by an *ex parte* examination of the matter, and to aid plaintiff in the prosecution of the present action; that plaintiff had industriously moved about the county, and also about the court during term time, and all public places in the village, manifesting to the world great lameness, and constantly carrying a cane, and talking with persons about his personal injuries and the precarious state of his health, and falsely attributing the same to bodily injuries received from the defendant; that, as affiant was informed and believed, plaintiff had, during the pending term of the court, made remarks of this character in the presence of persons in attendance upon the court as petit jurors; that by these means he had imparted to a large num-

ber of the people of the county a partial and untruthful account of his cause, unfavorable to defendant, and (as affiant believed) had created such an unfavorable impression, &c., that an impartial trial of this cause could not be had in said county. Perry's affidavit was of a like tenor. The motion was denied. The court then, of its own motion, further suspended the call of the jury, and ordered a special *venire* for twelve jurors to issue; and this having been done, one of the persons summoned on the special *venire* was called as a juror in addition to the eleven previously called. The plaintiff declining to challenge any one of them peremptorily, one was so challenged by defendant, and one summoned on the special *venire* called in his place; and plaintiff still declining, a second peremtory challenge was made by defendant, and the place filled in like manner. Defendant then declined to challenge any other; whereupon the plaintiff was allowed, against defendant's objection, to challenge peremptorily one of the original eleven, and his place was filled by one from the special *venire*. A general challenge to the jury by defendant, on the ground that it was not regularly impanneled, was overruled.

The plaintiff testified that on the 7th of June, 1865, he was superintending, as pathmaster, work upon a public road; that defendant was at work thereon that day with his own plow, team, and a hired man named Baneck, the latter beaming, while defendant held the plow; that, observing that the team was standing still, he asked defendant to start it. " Baneck said it was hard work to beam; I told him to go and take my place; *Avery* said, ' Go, let him try it;' I got upon the plow with my hands; *Avery* struck the near horse with the lines doubled up; the near horse started on the jump; the off horse trotted; the evener was thrown back; it knocked my left hand off from the plow, and threw me down on my breast on to the plow; the near horse jumped twice or three times, and then came down to a trot with the off horse. I was hauled about four rods." He then

testified to abusive and threatening language used by defendant, either while he was upon the plow or after he got up; and as to the injuries which resulted from his being thrown on the plow and dragged as above stated. On his cross-examination he testified that he did not say, when he got up, that he was "not hurt a bit." The court refused to allow him to be asked, either how much he was worth, or whether, at the spring election prior to said 7th of June, he had given out that if elected pathmaster he would "put old *Avery* through." Plaintiff was permitted, against objection, to show that defendant was worth some $9,000 or $10,000. Dr. Cady, a physician called as witness for the plaintiff, after describing the condition of the plaintiff's spine, hip and abdomen, in the latter part of June, 1865, was asked whether, in his opinion, injuries to those parts producing effects such as he had observed in the plaintiff's case, would endanger a man's life at his age. An objection to this question was overruled, and the witness answered affirmatively. On re-examination by plaintiff, he was asked: "Is it, in your opinion, possible that you could have been misled as to the real nature of *Frank's* difficulties?" Objection overruled. *Answer:* "I could not as to the condition of his ankle or bowels."

The defendant's evidence tended to show that he had told the plaintiff, some time before the injury happened, on the same day, not to get on the beam of his plow; that when plaintiff came up to the plow, he ordered Baneck, with an oath, to put it in deeper; that plaintiff did not tell Baneck to take his place and he would beam, nor did defendant tell Baneck to go; that defendant, after starting up the horses, drove only two or three rods; that plaintiff kept both hands on the beam, and did not fall across it, and was not dragged; that when he got up he said that he "was not hurt a bit," that he was around at work the remainder of that day, and the next day, not showing any signs of lameness, &c. The evidence need not be further stated here.

Defendant excepted to instructions to the effect, 1. That he was liable for actual damages if the injuries were produced by his acts, either "*negligently* committed—that is, such acts as a man of ordinary care and prudence would not have committed—or willfully and maliciously done," with the intention of doing some bodily injury. 2. That the jury might allow for *future* pain, sickness and loss of time. 3. That if the acts were willfully or maliciously done, with intent to injure, &c., they might allow punitive or exemplary damages. 4. That if plaintiff's conduct at the time was provoking or insulting to defendant, this might be considered to mitigate or defeat the claim for *exemplary* damages; but mere insulting or abusive language, or acts not amounting to an assault or threatened assault, would not defeat or lessen the claim for *actual* damages. The court refused the following instructions asked by defendant : "1. An overseer of the highways has no power to compel obedience to his orders, and if parties at work on the highway neglect or refuse to work when required to do so by the overseer, his simple duty is to give them no credit for work on their highway tax. 2. An overseer of highways is a trespasser, who takes possession of a man's team or plow against his consent. 3. If you find that plaintiff has sworn falsely on any one material point in the case, you must not give credit to anything he has sworn to."

Verdict and judgment for plaintiff for $3000 ; and defendant appealed.

*Gill & Barber*, for appellant, argued that a change of venue should be granted " when there is reason to *believe* that an impartial trial cannot be had" (R. S., ch. 123, sec. 6, subd. 2); and the affidavits show a reason for such belief in this case. *People v. Webb*, 1 Hill, 179–184. 2. The plaintiff's right to a peremptory challenge had been fully waived. 3. The court had no power to issue the special *venire*, except to supply a deficiency in the original panel. R. S. ch. 116, sec. 6. None

Frank vs. Avery.

was alleged to exist. The three jurors called in place of those challenged were neither jurors lawfully summoned upon the panel, nor were they talesmen. Their presence rendered the whole jury irregular. 4. Plaintiff's declarations before the election went to show his *animus*, and were admissible in mitigation of damages. 18 Wis., 287, 290. 5. If the action was for injuries occasioned by *negligence*, evidence of defendant's wealth was inadmissible. *Myers v. Malcom*, 6 Hill, 292; Sedgw. on Dam., § 266. 6. The question put to Dr. Cody, first objected to, assumed that the plaintiff had been "injured." The second merely called upon him for an opinion as to his ability to detect an imposition. 1 Greenl. Ev., § 440. 7. The complaint was for *willful* injuries to the person. Defendant's *negligence* was not in issue. The first instruction excepted to was therefore erroneous. *Churchill v. Churchill*, 9 How. Pr. R., 552; *Lockey v. Vanderbilt*, 10 id., 161; *Boyce v. Brown*, 7 Barb., 80; *Andrews v. Bond*, 16 id., 633; *Sweet v. Mitchell*, 15 Wis., 664. 8. It was argued, in aggravation of damages, that plaintiff was acting in the line of his official duty. Defendant was then entitled to have the jury instructed as to the rights and duties of an overseer of highways. 9. "*Falsus in uno, falsus in omnibus,*" is the well settled doctrine of the law; and the court erred in refusing so to instruct the jury.

*Enos & Hall*, for respondent, as to the denial of a change of venue, cited *People v. Wright*, 5 How. Pr. R., 23; 2 Caines, 46; 1 id., 487; 2 Wend., 250; 12 id., 203. 2. As to plaintiff's right to a peremptory challenge as made, they cited *Schumaker v. The State*, 5 Wis., 324. A challenge to the array cannot be founded on objections to individual jurors. *Conkey v. Northern Bank*, 6 Wis., 447, and authorities there cited. 3. It is not necessary to the statement of the cause of action, that defendant's acts should be characterized either as negligent or willful. The nice distinctions existing at common law between the actions of trespass and case, and *the modes of* pleading, are swept

away by the code. Van Santv., 289, 290, 310, 317, 504. 4. The instructions as to the rights, duties and liability of over-seer of highways were properly refused; first, because there was no testimony on which to found them, and secondly, be-cause they are not law. 5. The third instruction asked was properly refused. *Mercer v. Wright*, 3 Wis., 645.

DIXON, C. J. Upon a motion to change the venue on the ground that an impartial trial cannot be had in the county where the action is pending, the inability to obtain a fair and unprejudiced jury must be clearly established. The opinions and belief of witnesses will not be taken. The facts and cir-cumstances showing that a fair trial cannot be had, must be set forth, so as to enable the court to judge for itself whether or not the application is well founded; and some of the cases go so far as to require an actual experiment whether a fair and unprejudiced jury can be impanneled, as the only evidence upon which the court can safely act in granting the motion. In this case the defendant moved upon his own affidavit and that of one other person. The matters relied upon in support of the motion were chiefly contained in the affidavit of the de-fendant. Some of them were stated upon his information and belief, and others were not. They came far short of the re-quirements of the rule as above stated. The conduct of the plaintiff may have been very reprehensible, and many persons prejudiced thereby; still it seems to us that no one can read the affidavits and say that the inability to obtain an impartial jury in Jefferson county was clearly established, or that there was good reason to believe that such a jury could not be had. As was observed by Judge NELSON, in the *People v. Bodine*, 7 Hill, 149, the readiness with which an unexceptionable jury was impanneled on the trial is also entitled to considerable weight. We think there was no error in denying the motion.

There is nothing in the other exceptions for which the de-

fendant is entitled to a new trial. Those principally urged arise from the refusal of the court to give several instructions asked by the defendant. Those instructions were drawn upon the theory that the complaint was for a willful injury only, and that there could be no recovery for injuries carelessly or negligently inflicted. In this we think the defendant's counsel mistaken. The words of the complaint are, "wrongfully, wilfully and maliciously." A rash or negligent act by which damage is caused to another is also a "wrongful" act, and may be properly so charged in pleading. The complaint is sufficient to sustain the verdict, even though the jury had found that the injuries were inflicted unintentionally, but through the careless or negligent conduct of the defendant.

The damages given by the jury seem large, it is true; but if the jury believed the testimony offered for the plaintiff, it cannot be said that they are excessive. On the whole, we are of the opinion that the judgment of the circuit court must be affirmed.

*By the Court.*—Ordered accordingly.