## TIMM V. BEAR.

*Evidence, burden of proof; custom.   Instruction, assuming facts.   Mills, upper and lower; rights of owners.*

1. An instruction that defendant "had no right to do" certain specified things, does not assume that he did them, or take the question of fact from the jury.

2. In general, a sufficient *prima facie* case for the recovery of damages is made, when plaintiff shows a loss sustained by him and caused by the act or default (or what may have been the default) of the defendant.

3. Matters of excuse or justification must in general be shown by the party claiming the benefit of them.

4. It was not error, therefore, in action by a lower against an upper mill-owner, to instruct the jury that if defendant, at any time after the erection of his dam, and before the commencement of the action, detained the water at his pond so that it did not run to plaintiff's mill in its usual current, and by reason thereof plaintiff suffered injury, defendant is liable to plaintiff for such damage, unless it appears that such detention was necessary and reasonable for the convenient and profitable use of defendant's mill.

5. Under an averment that defendant, "well knowing the premises, and contriving and wrongfully intending to injure the plaintiff in this respect," erected a certain dam and obstructed the flow of the water, it is sufficient to prove the acts and injuries complained of, without showing express malice—every man being presumed to know and intend the consequences of his acts.

6. Although acts are expressly charged to have been wilfully and maliciously done, if they are also charged to have been *wrongfully* done, a recovery may be had for the wrongful acts without proof of wilfulness or malice.

7. As between an upper and lower mill on the same stream, what constitutes a *reasonable* use of the water by the upper mill depends on the particular circumstances of each case; such as the nature, extent and necessity of the use, the manner in which the water is applied, the previous usage, the nature and condition of the improvements upon the stream, the volume and velocity of the water, and its prospective rise and fall, the nature and situation of the lower mill and pond, the capacity of the latter, and the practicability of enlarging it.

8. The upper mill owner, in general, has no right to deprive the lower mill of the natural flow of the water longer than is necessary to raise a suitable head to run the machinery of his own mill, *such machinery being reasonably adapted to the size of the stream.*

9. Proof that defendant's upper mill wheel draws fifty per cent. more water than the natural flow of the stream would supply; that the stream is one of about uniform flow; and that defendant is in the habit of retaining the water in his pond until it will run his wheel to its full capacity—would sustain the finding of a jury that defendant's use and detention of the water is unreasonable, as against a lower mill which can avail itself of only a comparatively small pond.

10. Evidence was properly admitted as to the manner in which the water of the stream had been used, its volume, power and steadiness, and the amount of work which had been done in plaintiff's mill for a number of years before defendant erected the new dam and changed the machinery in his mill so as to detain the water in the manner complained of—such evidence bearing upon the question of the unreasonableness of defendant's use of the water.

11. Evidence of the custom of upper mill owners on *other streams* than the one in question, to shut their gates and hold the water when their mills are not at work, is inadmissible.

APPEAL from the Circuit Court for *Sheboygan* County.

Action by a mill-owner to recover damages alleged to have been sustained by him by reason of the defendant's erecting a new dam to supply his own mill, called the Cascade Mill, above on the same stream, with water, and thereby detaining the water, or letting it off in a manner different from its previous use.

The complaint, after stating the ownership and former condition of the two mills and dams, and the flow and use of the water of the stream, alleges " that the waters of said stream ought now to run and flow to the said plaintiff's mill for the supplying the same with water, without any obstruction or impediment, and without being retained or held back, excepting by the use of the water of said stream by the said Cascade Mill in the manner aforesaid; yet the said defendant, well knowing the premises, but contriving, and wrongfully and unjustly intending to injure this plaintiff in this respect, and to deprive him of the use, benefit and advantages of the waters of said stream, and to hinder and prevent this plaintiff from working his said mill in so beneficial and ample a manner as he had heretofore done, and of right ought to have done, and to injure him, this plaintiff, in the use of his mill and business as a miller, which he, this plaintiff, during all the time aforesaid, exercised and carried on, and still doth exercise and carry on at said mill, heretofore, to wit: in the month of August, 1869, he, the said defendant, built and erected across the natural channel of

said stream, about 120 rods above the said mill of this plaintiff, a dam about 200 feet in length and about twelve feet high, and from the time last aforesaid, the said defendant has ponded the water of said stream above the said dam, and stopped the course of the water in its accustomed flow, as aforesaid, to the mill of this plaintiff, and still continues his new erected dam and obstruction aforesaid, thereby frequently stopping the water from coming to this plaintiff's mill, and obliging the same to stand still for want of water, and at other times letting out the water through the said dam or through the said mill so occupied by this defendant, so suddenly and in such quantities as to waste the same," etc.

The answer alleges that the defendant's mill is situate upon a stream not navigable, and has been maintained for nearly twenty years and propelled by the waters ponded above the mill; that the dam complained of was constructed to use instead of the original dam, and that his use of the water at his mill always has been and still is a reasonable and proper use thereof; that the plaintiff's reservoir for his lower mill was insufficient in capacity, and that the defendant's new dam operated as a reservoir to the lower mill as well as to the upper mill, and greatly increased its capacity; and also contains a denial of the allegations of the complaint, so far as not admitted by the special answers.

The proof showed that the two mills were situated at Cascade, Sheboygan county, on the east branch of the Milwaukee river, a very small stream; that the defendant erected the upper mill and a small dam in 1852, and the plaintiff erected his mill, forty or fifty rods below, in 1855, with a short, low dam, creating a reservoir only sufficient to supply his mill fifteen minutes after the water was shut off at the upper mill; that in 1866 or 1867, the defendant put new and improved wheels into his mill, and the plaintiff put similar wheels into his mill a year or two later; that both mills were custom mills, but were occasionally used for merchant work; that in 1869 the defendant built a new

dam, nearer his mill than the old one, but raising the water to the same height and creating a larger reservoir; that previous to such new dam, the water, during a great share of the time, passed through the defendant's mill to the plaintiff's mill without interruption, but was occasionally shut off by the defendant in order to gather a head in his pond; that after the new dam was erected the water was not allowed to escape through defendant's mill when it was not running, but as soon as his pond was replenished, the water would run over his waste weir to the plaintiff's mill; that at several times, immediately upon the arrival of grists at plaintiff's mill, the gates were closed at the defendant's mill, and the plaintiff could not grind, and at other times the water was let off suddenly at defendant's mill and run over the floor of plaintiff's mill, and went to waste; and that the defendant's wheels used, when running, nearly fifty per cent. more than the ordinary supply of water in the stream.

The evidence in relation to the character of the stream and its former use by the parties, was received under defendant's objections. Upon the question of damages, the plaintiff gave evidence as to the quantity of grain he could and did grind previous to the erection of defendant's new dam and detention of the water, and the quantity he could grind afterward, and his loss of customers by reason of the delays occasioned by defendant's shutting off the water; which was also received under defendant's objections. A motion for a non-suit on the ground of the insufficiency of the plaintiff's proofs, and of the want of proof of malice on the part of the defendant in the construction of the new dam, or of a malicious or wanton use or detention of the water afterward, was denied.

The defendant, among other things, offered to prove a custom among mill-owners in similar cases, of shutting down their gates and holding the water when their mills were not running; which was objected to by plaintiff, and ruled out.

The defendant excepted to the first and second instructions given by the court at plaintiff's request, which are as follows:

Timm vs. Bear.

" 1. The defendant, in the absence of any evidence showing a paramount right to the use and control of the water by the owners of the mills and dams now owned and occupied by him, had no right to detain and hold the water back and let it down at improper times and seasons and in an unreasonable manner, so as to injure the plaintiff and prevent him from using and driving his mill at proper times and in a reasonable manner. 2. When mills are situate on the same stream, those which are lowest on the stream take the water subject to the previous rights of those above to use and employ it for their mills and works, and to do all that is necessary and usual for the purpose by building dams and forming mill-ponds, and erecting gates and such other structures as may be reasonable, convenient and proper; but the owners of mills situate above other mills upon the same stream are bound to use and employ the water in a reasonable and proper manner, conformably to the usages and wants of the community, and not inconsistent with a like reasonable and proper use of it by others on the same stream below. And, if the jury are satisfied that the defendant has not used the water in a reasonable and proper manner for the regular prosecution of his business, but during the times specified in the plaintiff's complaint has used it unreasonably, wantonly and unnecessarily, by running his mill at unusual and unreasonable hours, and holding back the water and letting it down to plaintiff's mill at improper times of day and night, so that the plaintiff was thereby deprived of the reasonable, ordinary and proper use of his mill, and was thereby injured, he is entitled to recover such sum in damages as he has shown he has sustained in consequence thereof."

Defendant also excepted to the third instruction, which appears in the opinion of the court; and to the fourth, which gives the rule as to punitory damages.

Judgment was rendered for the plaintiff; from which the defendant appeals.

*Bentley & Seaman*, for appellant, contended that a non-suit

should have been granted, because the proof shows the new dam to have been constructed by the defendant on his own land for a lawful purpose, and entirely without malice; and its effects upon the current of the river were such as are incident to its use for any hydraulic purposes, and raise no presumption of malice, citing *Merritt v. Brinckerhoff*, 17 John., 306; *Davis v. Winslow*, 51 Me., 264; *Pitts v. Lancaster Mills*, 13 Met., 156; *Patten v. Marden*, 14 Wis., 473; *Davis v. Getchell*, 50 Me., 602; that the testimony relative to the former use and detention of the water was improperly admitted, and the testimony as to the custom of millers was improperly excluded, citing *Thurber v. Martin*, 2 Gray, 394; Angell on Watercourses, § 93, a; that, of the instructions given at plaintiff's request, the first assumes facts; part of the second was not justified by the evidence; and the third was against the law of the case, because the law would presume such changes in the velocity and quantity of water as occur below water mills to be necessary and proper, until the contrary appears.

*B. Williams*, for respondent, argued that the proof given as to the character of the stream and what it had accomplished in previous years, the effect of the changes made by the defendant in the manner of using the water, in diminishing the productiveness of the plaintiff's mill, and his consequent loss of customers, was all proper and admissible; but, if any of it was objectionable, yet there was sufficient evidence of damage to sustain the judgment; and that the evidence of the custom of millers was properly excluded, citing 44 N. H., 580; 5 Hill, 437, and distinguishing *Snow v. Parsons*, 28 Vt., 459; Angell on Watercourses, 206, 342, 243; *Thurber v. Martin*, 2 Gray, 394, from the present case.

DIXON, C. J. The charge was chiefly made up of, and the court below granted, the requests to instruct, one and all, as prepared and presented by counsel for the plaintiff and for the defendant. Those requests evinced a very careful examination

and clear understanding, on the part of counsel respectively, of the principles of law applicable to the case, and by which the rights of the parties were to be governed. There was, we think, no inconsistency in the charge, and no misdirection in point of law. The requests to charge, though not identical in language and form of expression, were, so far as they covered or professed to cover the same points, identical in principle. It is only objected to the first request made for the plaintiff, that it assumed that the defendant had detained and held the water back, and let it down at improper times and seasons, and in an unreasonable manner, so as to injure the plaintiff, and prevent him from using and driving his mill at proper times and in a reasonable manner. The language of the request was, that the defendant " had no right " to do those things. It is true, the request might have been made more clearly hypothetical; still this was not the language of assumption, which took from the jury the consideration of the question whether the defendant had detained and held the water back, etc. The facts were left for the jury to consider and decide ; and it was only in case they found from the evidence that the defendant had detained and let down the water in the manner described, that they were informed he had no such right. This was the fair meaning and import of the instruction ; and so we think the jury must have understood it.

To the second request given for the plaintiff, the objection is, that there was no evidence which justified it. It is said that there was no evidence tending to show that " the defendant had not used the water in a reasonable and proper manner for the regular prosecution of his business, but, during the times specified in the plaintiff's complaint, had used it unreasonably, wantonly and unnecessarily," and so on, in the language of the request. Upon this point we can only say, that, after a careful reading of the evidence, we cannot agree with the learned counsel who make the objection. It clearly seems to us that

there was such evidence, which justified the granting of the request.

The third request to charge granted in plaintiff's behalf was in these words: "If the jury find from the evidence in the case, that the defendant did, at any time after the erection of his new dam, and before the commencement of this action, detain the water at his mill or pond so that it did not run to the plaintiff's mill in its usual current, and by reason thereof the plaintiff suffered injury, the defendant is liable to the plaintiff for such damages, unless it appears that such detention of the water by the defendant was necessary and reasonable for the convenient and profitable use of his own mill."

This instruction is said to have been against the law of the case, because the law recognizes changes in the current, in its velocity and the quantity of water, below all water mills, and such changes are presumed to be necessary and proper until the contrary appears. The gist of the objection, therefore, is, that the instruction was wrong as to the burden of proof, or which party had it, of showing that the detention of the water was necessary and reasonable for the convenient and profitable use of the upper mill, the fact of detention and of injury by reason thereof to the lower mill being first duly shown. Counsel cite authorities to the effect that such interruptions of the flow and changes in the volume and velocity of the water running in a stream used for hydraulic purposes, the same being necessarily incident to such use, carry with them no presumption of malice, but rather a presumption of innocence. That, however, is a different question; the point here, as already stated, being as to where the burden of proof rests to show the necessity and reasonableness of the detention, the fact of detention and of injury arising from it being first established. To this point no authorities are cited; and we doubt if any can be found to sustain the position assumed by counsel, which seems to be altogether outweighed by the reasons which may be opposed to it.

If not universal, it may at least be said to be a rule of very general application, that a sufficient *prima facie* case is made when it is shown that loss or injury has been sustained by the plaintiff, and that the same was caused by the act or default, or what may have been the default, of the defendant. A corresponding rule, and one no less general in its application, is, that matters of excuse or justifiction must be shown by the party claiming the benefit of them.

It is generally true of such matters, also, that they are peculiarly within the knowledge of the party seeking the benefit of them, and are not known or are incapable of disproof by the other party. To require the plaintiff to go beyond the *prima facie* case made by proof of injury, and of an adequate cause for it proceeding from the act or omission of the defendant, and to prove that there was no justification or excuse, would be to require him to prove a negative. This is a species of proof which the law and rules of evidence, except in rare and especial cases, never require. In the present case, it was far more fit and proper that the defendant should be required to show the necessity and reasonableness of the detention of the water for the convenient and profitable use of his own mill, than that the plaintiff should have been required to show the contrary. For these reasons we are of the opinion that this instruction, in common with all the others which were given, was correct, and that there was no misdirection in point of law in the charge of the court to the jury.

It appearing thus that there was no error in the charge, it next becomes necessary to inquire whether there was error in any other respect, for which the verdict and judgment should be set aside. It is said that the court erred in refusing to non-suit on the motion of the defendant made at the close of the plaintiff's testimony. This assignment of error proceeds partially on the ground that the sole cause of action charged in the complaint was a wrongful and wanton construction of the new dam and withholding of the water by means thereof, and that

there could be no recovery unless malice was shown. This is a mistaken view of the pleading, the charge being that the defendant " well knowing the premises, but contriving and wrongfully and unjustly intending to injure this plaintiff in this respect," erected the new dam and obstructed and prevented the flow of the water in the manner particularly set forth. This is the formula usually adopted in such cases; and, as every man is presumed to know and intend the consequences of his own acts, the allegations are satisfied by proof of the acts and injuries complained of, without proof of express malice. It is not the intent of the pleading to charge that the acts were wilfully and maliciously done, without express words to that effect; and even where they are so charged, and likewise wrongfully, a recovery may be had as for the wrongful act without proof of the wilfulness or malice. *Frank v. Avery*, 21 Wis., 166, 173. In *Twiss v. Baldwin*, 9 Conn., 291, which was an action altogether like the present, it was held that if the plaintiff allege that the acts complained of were done *maliciously*, wantonly and without any possible benefit to the defendant, proof of malice is not indispensable, there being a perfect cause of action without that ingredient, and it being a well established principle that the plaintiff in an action for a tort need only prove enough of the facts alleged to show that he has a good cause of action. See also *Ricketts v. Salwey*, 2 Barn. & Ald., 360.

But if proof of malice, or of a wanton withholding or letting down of the water at unreasonable times or hours of the day, were required to sustain the action, it cannot be said there was an entire want of evidence tending to establish it. We refer to the two occasions when it was shown that the water was withheld during the day, and then discharged at night in such quantities as to flood the floor of the plaintiff's mill; and to several other occasions when it appeared that the water was stopped on the arrival of customers at the plaintiff's mill, and when no sufficient explanation or good cause for stopping it was made or shown by the defendant.

Timm vs. Bear.

It appears from the testimony, that the plaintiff's pond or reservoir for the supply of his mill is quite small — only sufficient to run the machinery for about fifteen minutes after the gate at the defendant's mill is shut down; and we infer from the testimony, also, that the same is incapable of being made larger on account of back water upon the defendant's wheel. This situation of the plaintiff's mill, the smallness of his pond, and the impossibility of making it larger, whilst they are circumstances of disadvantage to the plaintiff, for which he has no cause of complaint, and cannot make them the basis of any recovery against the defendant, so long as the latter uses the water of the stream in a reasonable and proper manner, yet they are circumstances which must be taken into consideration in determining what is such reasonable and proper use. If, for example, the plaintiff's pond were as large, or capable, without too much expense and trouble, of being made as large as that of the defendant, it is very improbable that any complaint of the kind here made would ever have been presented, or that the plaintiff would have suffered any injury from the detention or letting off of the water in the manner shown. In that case the use made by the defendant of the water might not be improper or unreasonable, because, under the circumstances, no injury could come from it to the proprietor of the lower mill.

What constitutes reasonable use depends upon the circumstance of each particular case, and no positive rule of law can be laid down to define and regulate such use with entire precision, is the language of all the authorities upon the subject. In determining this question, regard must be had to the subject matter of the use, the occasion and manner of its application, its object, extent and the necessity for it, to the previous usage, and to the nature and condition of the improvements upon the stream; and so also the size of the stream, the fall of water, its volume, velocity and prospective rise and fall, are important elements to be considered. The nature and situation of the plaintiff's mill and pond, the limited capacity of the latter, and

the absence of any means or facilities by which it could be enlarged so as to retain and hold the water of the stream when discharged in quantities larger than its ordinary and accustomed flow or current, were, therefore, circumstances not to be overlooked in determining the reasonableness of the defendant's use. The defendant had no right to deprive the plaintiff of the ordinary and natural flow or passage of the water in the stream; that is, in quantities as the same would naturally run, longer than was necessary to raise a suitable head for his own. mill, and to propel or run the machinery therein with convenience and profit, *such machinery being reasonably adapted to the size of the stream.*

It appears from the evidence that the stream is a small one, with barely sufficient water at ordinary stage to run one mill-stone and the other necessary machinery with profit or advantage under sixteen feet head. It also appears that the stream, though small, yet, being supplied by springs, is well maintained throughout the year, and subject to few or no fluctuations in the volume or quantity of water passing, except in times of very heavy rains, or the melting of large bodies of snow, causing freshets. It furthermore appears from the testimony of mill-wrights and millers, persons familiar with the stream, and having had experience, and who have measured the quantity of water passing in it, that under sixteen feet head it has a power or capacity of only about 30 or 32 square inches of water. The evidence likewise shows that both mills are operated under nearly the same head of water, namely, sixteen feet; but that, while the plaintiff's wheel is so made as to draw but thirty inches of water, that of the defendant is so constructed as to draw 45 inches, and, when operated with "full gates," as it frequently is, takes that quantity. The defendant himself testified to having admitted that such was the capacity of his wheel; and the same was positively so stated by his own witness, the miller who attended his mill.

We state these as the facts which the testimony, with little

Timm vs. Bear.

or no conflict, tended to prove ; it being, of course, the province of the jury to say what the facts really were. We refer to them to show that it was no error to refuse to non-suit, or that clearly there can be no reversal on this ground, after the proof made by the defendant of the size and capacity of his wheel, and the manner in which it was operated. *Barton v. Kane*, 17 Wis., 37, 45. It requires no argument to show that here was evidence proper to be submitted to the jury, and from which, under the instructions of the court, they might find that the defendant's use of the water was unreasonable, and consequently unlawful. The language of the instruction in this particular, given at the request of the defendant, was as follows : " After he [defendant] has ponded the water, he may let it through his mill, in working it, in reasonable quantities to operate his mill; and if, in so doing, he increases to some extent the velocity and quantity of water at times below the mill, when it is in operation, or decreases it at other times when his pond is filling up, the plaintiff cannot complain, *unless he uses excessive quantities of water in proportion to the capacity of the stream* and his own mill privilege, or *causes an unreasonable detention of it.*"

It is obvious, under this instruction, which correctly states the law, that the defendant could not erect his mill and provide it with machinery requiring, or which might take, one-half more water to propel it than the quantity ordinarily and usually passing in the stream, and claim the right to withhold and discharge the water for that purpose, to the injury of the plaintiff. In other words, no proprietor of a mill can put a forty-five-inch wheel into a thirty-inch stream, under the proper head, and then claim the right to detain and discharge the water in quantities sufficient to drive such wheel to its full capacity, to the injury of other mill-owners below him on the same stream. Such a use of the water would be unreasonable, within the rule laid down in the instruction. It is not in proportion to the size or capacity of the stream, and necessarily involves un-

reasonable detention of the water to obtain the requisite power, and then discharge of it in unreasonable or excessive quantities, when the power is applied. For these reasons, and in view of these facts, which the evidence tended to establish, as well as in view of the other evidence given, we are of opinion that the motion for a nonsuit was properly denied.

There was no error in overruling the objections to the questions put to the plaintiff as a witness relative to the detention in the flow of the water before the new dam was built, and to the number of years the water had been used in the way described by the witness. These and other similar questions, which were objected to by the defendant, were proper, for the reasons assigned by counsel for the plaintiff in his brief. It was proper that the jury should know all about the manner in which the water of the stream had been used, its volume, power and steadiness, and the amount of work which had been done in the mill of the plaintiff for a series of years before the erection of the new dam and the change of machinery by the defendant in his mill, in order that they might ascertain and determine the reasonableness of the present use, and whether the plaintiff had been injured or not.

Nor was there any error in overruling the objection to the question propounded to the witness Byren, as to the amount of work the plaintiff's mill could do if it had a constant supply of water. There was no liability, as counsel seem to suppose, to mistake on the part of the jury as to the amount of work actually done, or which would probably be done, at the plaintiff's mill, with a constant supply of water according to the size of the stream, or the usual quantity of water flowing in it. The extent or amount of the plaintiff's customs as they had existed for several years, and probably would have continued but for the interruptions complained of, were clearly shown; and it was proper to show the capability of his mill with a constant supply of water to do work, in order to establish his probable loss.

·Timm vs. Bear.

The only remaining inquiry arises upon the exceptions taken to the rulings of the court excluding evidence as to the custom or usage among mill-owners upon the same stream, having ponds for the supplying of their mills, to shut their gates and hold the water when their mills are not at work.

Two questions were put by the defendant for the purpose of introducing testimony of this kind, both of which were objected to by the plaintiff, and the objections sustained. This question has been presented respectively to the courts of Vermont and New Hampshire, and with directly opposite results in each state. In the former, the testimony was held admissible; and in the latter, not. *Snow v. Parsons*, 29 Vt., 459; *Hayes v. Waldron*, 44 N. H., 580, 587; *Hubbard v. Concord*, 35 N. H., 60, 61.

Without entering into a statement of the reasons assigned by the court of Vermont for its decision, we say that they seem unsatisfactory to us, when contrasted with those given by the court of New Hampshire in support of the opposite view. The reasoning of the last named court in the case last cited, where the point was upon the admissibility of such evidence upon the question of negligence in failing to keep in proper repair, or properly to construct, a sidewalk, whereby injury was caused, is very clear and satisfactory. As observed in the case first cited from the same court, the questions as to what shall constitute a reasonable state of repair of a highway, and what is a reasonable use of a water-course, are very similar. In the case of a water-course, as already remarked in this opinion, what constitutes a reasonable use depends upon the circumstances of each particular case; or, as the court of New Hampshire expresses it, "upon a variety of conditions, such as the size and character of the stream, and the uses to which it can be or is applied; and, from the nature of the case, it is incapable of being defined to suit the vast variety of circumstances that exist; but the rule is flexible, and suited to the growing and changing wants of communities."

How, upon such a question, the jury, who are to decide it upon the facts and circumstances of the particular case before them, and which is unlike every other, can be aided by evidence of the usage or custom of mill-owners, in other places and upon other streams, whether such usage or custom be right or wrong, is certainly not plain to our minds. It is observed by the court whose rule we adopt, that the jury knowing all the facts and circumstances of the particular case, may be presumed to be already sufficiently informed as to what is a reasonable use of a water course, without proof of usages and customs. It is also observed that the admission of such evidence would be to open an extensive field of inquiry in this and similar cases, upon the same principle, that would tend greatly to increase the expenses of litigation, without affording in general any substantial aid to the jury. This, in our own judgment, is a consideration of paramount importance, which greatly overbalances the consideration of any possible advantages which might be derived from such evidence, if admitted.

*By the Court.*—Judgment affirmed.