Town of Lawrence, Respondent, vs. American Writing Paper Company, Appellant.

*October 26, 1910—January 31, 1911.*

*Equity: Injunction: Laches: Mills and milldams: Rights of flowage: Riparian rights: Erosion of banks: Highways.*

1. Where, by user during more than forty years, a town acquired a prescriptive right to maintain a highway on a bank of a river, but during the same period recognized and acquiesced in the right of the owners of a lawful milldam lower down on the stream to maintain such dam at substantially the same height and to keep the water adjacent to the highway at about the

same level, large sums being expended by such owners on the strength of their belief that they could continue such use of the water power, the town is not entitled to equitable relief restraining the mill owners from maintaining, by the use of flush-boards on the dam, substantially the same conditions as had existed during the period mentioned, especially where the injury to the town is slight and the loss to the mill owners would be comparatively large.

2. Acts of the town twenty-two years before commencing the action, and again four years before the action, in moving back the highway, without protest, because of the erosion of the bank theretofore caused by the water, showed conclusively that it recognized the right of the owners of the water power to maintain the water at its then level, and acquiesced therein.

3. The owner of water power has a right, the whole year round, to the use of the stream and the banks below ordinary high-water mark as nature created them, subject to a reasonable use thereof by other owners of power and of riparian rights; and he may, in a season of low water, by artificial means restore the water to a higher stage, provided he does not raise it above ordinary high-water mark, and provided such restoration is reasonably necessary to the full enjoyment of his water rights and creates no essentially different conditions from those which would prevail were the rise of the stream a natural one.

4. A mere riparian right is subject to reasonable use of the stream for power purposes, and if any damage results therefrom the owner of the right is without remedy.

5. The owner of a water power whose use of the water is lawful and usual cannot be held liable for damage done to a highway so located on the edge of a stream above his dam that some injury thereto by the waters of the river is natural and inevitable, although the damage is increased by the combined action of upper proprietors in periodically shutting off the flow of the water, of the lower owner in then ponding it, and of nature in freezing and expanding it under such changing conditions, together with the natural stage of high water in the spring when the ice is carried away.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, Circuit Judge. *Reversed.*

This is a suit in equity praying for a perpetual injunction to restrain the defendant from maintaining flush-boards upon the crest of a dam across the Fox river at De Pere, Wisconsin,

and demanding damages for an injury to a highway claimed to have been caused by reason of the use of such flush-boards.

The defendant owns a paper mill on the west bank of the Fox river at De Pere that requires about 1,800 horse power for its operation. The plaintiff town has for more than forty years maintained, and now maintains, a highway by user, which, at about five and two-thirds miles above defendant's dam, in places borders directly upon the bank of the river. In such places the surface of the ground is but a little above the level of the water; but the shore is marked by a perpendicular bank below which is a beach, exposed at low water and covered up to the bank at high water. About twenty-two years ago, owing to the gradual erosion of the bank by the water, the highway in some places was moved back from the bank; and four years ago it was again moved back still further.

As early as 1837 a dam was built across the river at or about the location of the present dam. This dam was rebuilt in 1849, and prior to 1872 the United States government purchased the dam and assumed its control and management. Between 1872 and 1874 it built a new dam a few feet south of the old one and practically of the same height. Owing to the fact that it was tighter, it held the water back at a little higher level than the old one did. The government permits the water to flow over the crest of the dam to a height of two feet before it opens the flood-gates, and then it does so in order not to subject the dam to too great a pressure. It does not permit the water to be drawn off for power purposes lower than the crest of the dam. The east end of the defendant's dam connects with the government dam, and since it began to operate its mill in 1892 it has in times of low water maintained flush-boards upon its own dam and later upon the government dam under a license from the United States relieving the latter from any liability on account of the use of such flush-boards. When the water is eighteen inches or

more above the crest of the dam, flush-boards are not permitted to be used.

Since 1874 there has existed a number of mills at Neenah, Appleton, Kaukauna, and other points on the river, run by water power.   These mills shut down from Saturday evening until Monday morning, and when so shut down they hold the water back to such an extent that during Mondays and part of Tuesdays it is so low at De Pere that defendant cannot draw from the reservoir sufficient to run its mill without drawing the water below the crest of the dam.   To overcome this condition as far as possible, it has, during all the time that it has run its mill, when the flow of the water was so small as to require it, used flush-boards on the dam, some eight and some twelve inches high, the effect of which has been to raise the average water level of the reservoir about ten inches above the level maintained prior to 1892, during low stages of water.

There has been considerable fluctuation in the flow of the river, and the water was higher on the crest of the dam more of the time annually when there were no flush-boards on it than during the time when flush-boards were used.   At no time has the use of flush-boards caused the water to overflow the river bank where the highway borders on it.   When the water is at the crest of the dam it does not cover the shore or beach nor reach the bank along the highway.   When the water is eighteen inches above the crest of the dam it reaches the bank on which the highway borders; but even when it is two feet high on the crest of the dam it does not overflow the bank.

The bank on which the highway abuts has not been washed away by a swift current, but by the joint action of ice and water.   It is claimed that the river freezes when the water is at a high stage.   When the water falls, the ice cracks and parts not far from the shore.   The space thus opened fills with water and freezes again, thus extending the width of the ice.   When the water again rises, the ice is forced against the

bank, raises it up and breaks its edge, and when the ice moves out with the high water in the spring the loose dirt is washed away. This action is caused mainly by the holding back of the water over Sunday by the mills above.

Such washing away of the bank took place before 1892 as well as since, but by reason of the maintenance of the higher level it has worn away with greater rapidity since 1892. A washing away of the bank would have taken place had the defendant made no use of the water at De Pere and had the United States government continued to use its dam with the depth of water at its crest from nothing up to two feet, but such washing away would have been appreciably less in extent had no flush-boards been maintained.

By reason of the use of the flush-boards and the higher level maintained at times, the plaintiff has been damaged in the sum of $257. It does not appear that the right of maintaining a flowage level of two feet above the crest of the dam has been exercised either by the defendant or the government of the United States for more than twenty years next preceding the commencement of this action.

The trial court held that plaintiff was entitled to a permanent injunction as prayed for and damages as found by it. From a judgment entered accordingly, the defendant appealed.

For the appellant there was a brief by *Martin, Martin & Martin,* and oral argument by *P. H. Martin.*

For the respondent there was a brief by *Cady, Strehlow & Jaseph,* and oral argument by *S. H. Cady* and *L. D. Jaseph.*

The following opinion was filed November 15, 1910:

Vinje, J. 1. It appears from the foregoing statement of facts that for more than forty years the town has maintained a highway by user along the bank of the Fox river; that at least since 1849 a dam has been maintained at the place in question of substantially the same height as the present one;

and that owing to the fluctuations in the flow of the river the water was higher more of the time annually when there were no flush-boards on it than during the time when flush-boards were used. It is apparent, therefore, that the town acquired its prescriptive right to the highway by user concurrently with, if not subject to, the right to use the river lawfully for power purposes, and that it has until very recently so continued to regard and hold such right. Both parties concede that the present dam is a lawful structure, and no claim is made but that the dams previously built were also lawful structures. We have, therefore, this situation: After the lapse of more than forty years, during which time the town has recognized and acquiesced in the right of the defendant and its predecessors to use the water as it has been used, it now for the first time comes into a court of equity and asks that defendant be restrained from maintaining, by the use of flush-boards, conditions in no material respect different from those that have existed during all of that time.

About twenty-two years ago, long before the defendant owned its mill, the town moved the highway back because of the erosion theretofore caused by the water, and again four years ago it moved it still further back owing to the same cause. These acts show conclusively that the town recognized the right of the owners of the power to maintain the water at its then level and that it acquiesced therein. The defendant, when it bought its power, had a right to rely on the fact that conditions so long maintained without protest would be permitted to remain substantially unchanged in future. During all of this time the town stood idly by and permitted large sums of money to be expended by the defendant on the strength of its belief that it could use its power and the waters of the river as they had been used in the past. Should plaintiff at this late day, because during a period of six years it has suffered damages to the extent of a few hundred dollars, be adjudged entitled to restrain the defendant from the use of

flush-boards and deprive it of power which in weekly, if not daily, value no doubt exceeds the yearly damage? It seems that under such circumstances the court ought not to grant the relief. To do so would not be doing equity but a gross injustice. If plaintiff ever had any rights, it has slept upon them too long to entitle it to come into a court of equity and obtain the desired relief. *Coon v. Seymour,* 71 Wis. 340, 37 N. W. 243.

2. Has the defendant by the use of its flush-boards so manipulated the water as to incur any liability to plaintiff? The flush-boards have been used on the dam only when the water was at a low stage, caused either by natural conditions or by the holding back of the water by upper mill owners. At no time has the use of flush-boards caused the river to rise above ordinary high-water mark, that is, the point up to which the presence and action of the water is so continuous as to leave a distinct mark either by erosion, destruction of vegetation, or other easily recognized characteristic. The water has always been controlled within the natural limits of the stream and within the limits of its ordinary high and low water marks, and such control has been rendered necessary by the lawful and proper use of the water by upper proprietors of mills or by natural causes. Such use, within such limits and under such circumstances, is a lawful use. The owner of water power is entitled the whole year round to the use of the stream and the banks below ordinary high-water mark as nature has created them, subject to a reasonable use thereof by other owners of power and of riparian rights. And he may in a season of low water, by artificial means, restore the stream to a condition of a higher stage of water than then exists, provided he does not raise it above ordinary high-water mark and provided such restoration is reasonably necessary to the full enjoyment of his water rights and it creates no essentially different conditions than would exist had there been a natural rise of the stream to the same extent and for the same

length of time.  A mere riparian right is subject to such reasonable use of the stream, and if any damage results therefrom the owner of the right is without a remedy.  2 Farnham, Waters, § 476; Gould, Waters, § 218; *Timm v. Bear,* 29 Wis. 254; *Coldwell v. Sanderson,* 69 Wis. 52, 28 N. W. 232, 33 N. W. 591.

The defendant made no new or unusual use of the stream, nor did it create conditions essentially different from those that would have resulted from the upper proprietors holding the water back at stated intervals without any ponding thereof on its part.  The intermittent breaking and freezing of the ice from which the greater damage resulted was caused as much by the action of the upper mill owners as it was by that of the defendant; and it is a verity in the case that some damage would have been done to the highway if neither the upper proprietors nor the defendant had manipulated or controlled the water in any respect.  The location of the highway with reference to the river was such that the damage sustained might be said to be a natural and necessary incident thereto. It was the combined action of the upper proprietors in periodically shutting off the flow of water, of the defendant in then ponding it, and of nature in freezing and expanding it under such changing conditions, together with the natural stage of high water in the spring when the ice was carried away, that caused the damage.  Under such circumstances the defendant, whose use of the water was lawful, cannot be held liable.

*By the Court.*—Judgment reversed, and cause remanded with directions to dissolve the permanent injunction and render judgment for defendant.

A motion for a rehearing was denied January 31, 1911.