STATE, Appellant, v. McFARREN, Respondent.

*No. 300.  Argued February 5, 1974.—Decided March 5, 1974.*
(Also reported in 215 N. W. 2d 459.)

494

For the appellant the cause was argued by *Steven M. Schur,* assistant attorney general, with whom on the briefs was *Robert W. Warren,* attorney general.

For the respondent there was a brief by *Lauer & Meyer* and *Ralph M. Lauer,* all of Clintonville, and oral argument by *Ralph M. Lauer.*

WILKIE, J. Two legal issues are raised on this appeal:

1. Did the circuit court err in dismissing the petition on the ground that the order lacked a finding of fact on the nonexistence of a bulkhead line?

2. Did the court err in dismissing the petition on the ground that the criminal transcript had not been made a part of the record?

## NONEXISTENCE OF A BULKHEAD LINE

### *What is a bulkhead line?*

The legislative council notes to secs. 30.04, 30.11 and 30.12, Wisconsin Statutes Annotated, indicate that "bulkhead line" is the term which replaced "shoreline" in previous statutes to conform to terminology used by the federal government and that no substantive change was intended—only a change in terminology. Sec. 30.11, Stats., explains how a bulkhead line is established: Any municipality may establish such a line by ordinance,

subject to DNR approval. While the line "shall conform as nearly as practicable to the existing shores" certain exceptions are allowed. Such lines are established by filing with the department a map indicating the line and the existing shore and a copy of the ordinance establishing the line. Thus, a bulkhead line is not merely the natural shoreline but is a line legislatively established by a municipality which may differ from the existing shoreline. A bulkhead line should also be distinguished from the low- and high-water marks on the shore. The ordinary low-water mark of a fluctuating lake has been defined as "the line or level at which the waters of the lake usually stand when free from disturbing causes . . . ." [1] The term "ordinary high-water mark" was most recently defined in *State v. McDonald Lumber Co.*: [2]

" 'By ordinary high-water mark is meant the point on the bank or shore up to which the presence and action of the water is so continuous as to leave a distinct mark either by erosion, destruction of terrestrial vegetation, or other easily recognized characteristic. *Lawrence v. American W. P. Co.* 144 Wis. 556, 562, 128 N. W. 440. And where the bank or shore at any particular place is of such a character that it is impossible or difficult to ascertain where the point of ordinary high-water mark is, recourse may be had to other places on the bank or shore of the same stream or lake to determine whether a given stage of water is above or below ordinary high-water mark.' "

In *McDonald* it was stated that the state's title to the lake bed runs to the ordinary high-water mark.[3] However, a riparian owner has a qualified right to the land between the actual water level and the ordinary high-

[1] *Slauson v. Goodrich Transportation Co.* (1897), 94 Wis. 642, 645, 69 N. W. 990.

[2] (1962), 18 Wis. 2d 173, 176, 118 N. W. 2d 152, quoting from *Diana Shooting Club v. Husting* (1914), 156 Wis. 261, 272, 145 N. W. 816.

[3] Citing *C. Beck Co. v. Milwaukee* (1909), 139 Wis. 340, 351, 120 N. W. 293.

water mark—he may exclude the public therefrom but he may not interfere with the rights of the public for navigation purposes.[4]

## Burden of proof.

The controlling issue which the parties raise here is on whom does the burden of proof lie in establishing whether or not a bulkhead line exists. Respondent argues that three elements of proof are necessary before a violation of sec. 30.12, Stats., can be found: The state must prove that material has been deposited in the water bed without a permit, and that no bulkhead line has been established (sub. (1) (a)), or that the deposit is beyond a lawfully established bulkhead line (sub. (1) (b)). The state argues, however, that it should not be required to prove the nonexistence of the line but that as an affirmative defense respondent should have the burden of proving that a bulkhead line exists which allows him to fill material in the lake bed. McCormick contains the best discussion of the factors involved in allocating burden of proof. It includes five factors as determinative of the burden: [5]

(1) "the natural tendency to place the burdens on the party desiring change,"

"The burdens of pleading and proof with regard to most facts have been and should be assigned to the plaintiff who generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure of proof or persuasion. The rules which assign certain facts material to the enforcibility of a claim to the defendant owe their development partly to traditional happen-so and partly to considerations of policy." [6]

"The customary common law rule that the moving party has the burden of proof—including not only the

---

[4] *Doemel v. Jantz* (1923), 180 Wis. 225, 235, 236, 193 N. W. 393.

[5] McCormick, *Evidence* (2d ed.), pp. 788, 789, sec. 337.

[6] *Id.* at page 786, sec. 337.

burden of going forward but also the burden of persuasion —is generally observed in administrative hearings. Section 7 (c) of the APA, for example, provides: 'Except as otherwise provided by statute, the proponent of a rule or order has the burden of proof.' State courts have reached the same result in connection with state administrative proceedings." [7]

In the case at bar, this factor would point to placing the burden on the state.

(2) "special policy considerations such as those disfavoring certain defenses,"

This factor is inapplicable here; there would appear to be no reason why a defense based on existence of a bulkhead line should be disfavored.

(3) "convenience,"

"A doctrine often repeated by the courts is that where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue. Examples are the burdens commonly placed upon the defendant to prove payment, discharge in bankruptcy, and license. This consideration should not be overemphasized. Very often one must plead and prove matters as to which his adversary has superior access to the proof." [8]

In speaking of a criminal statute, Corpus Juris Secundum states:

"Where the subject matter of a negative averment in the indictment, or a fact relied on by accused as a justification or excuse, relates to him personally or otherwise

---

[7] *Id.* at page 853, sec. 355. *See also:* 31A C. J. S., *Evidence,* p. 168, sec. 104 (a); *Loeb v. Board of Regents* (1965), 29 Wis. 2d 159, 138 N. W. 2d 227.

[8] McCormick, *Evidence* (2d ed.), p. 787, sec. 337. *See also:* 31A C. J. S., *Evidence,* p. 173, sec. 104 (a); 29 Am. Jur. 2d, *Evidence,* pp. 164, 165, sec. 131; *Erving Paper Mills v. Hudson-Sharp Machine Co.* (7th Cir. 1964), 332 Fed. 2d 674, certiorari denied, 379 U. S. 946, 85 Sup. Ct. 440, 13 L. Ed. 2d 544.

lies peculiarly within his knowledge, the general rule is that the burden of proof as to such averment or fact is on him. Thus, accused has the burden of proving that he possessed a license, where a license was necessary to lawfully perform a particular act or engage in a particular occupation, as appears in Licenses sec. 71. The prosecution need not adduce positive evidence to support a negative averment, the truth of which is fairly indicated by established circumstances, and which, if untrue, could be readily disproved by evidence probably within accused's control." [9]

In this case, however, the existence of a bulkhead line is not a fact peculiarly within respondent's knowledge. The existence of such a line must, under sec. 30.11, Stats., be registered with the municipality's clerk, the county register of deeds, and with the DNR. Thus, for the DNR to prove the nonexistence of such a line, it need merely check its records. If proof of the existence of such a line is easier for any party, it would seem to be the DNR.

(4) McCormick calls this factor "fairness;" it actually takes into consideration two factors: (a) proof of exceptions; and (b) proof of negatives.

(a) *Proof of exceptions.* McCormick states:

"In allocating the burdens, courts consistently attempt to distinguish between the constituent elements of a promise or of a statutory command, which must be proved by the party who relies on the contract or statute, and matters of exception, which must be proved by his adversary. Often the result of this approach is an arbitrary allocation of the burdens, as the statutory language may be due to a mere casual choice of form by the draftsman. However, the distinction may be a valid one in some instances, particularly when the exceptions to a statute or promise are numerous. If that is the case, fairness usually requires that the adversary give notice of the particular exception upon which he relies and therefore that he bear the burden of pleading." [10]

---

[9] 22A C. J. S., *Criminal Law*, pp. 315, 316, sec. 571.

[10] McCormick, *Evidence* (2d ed.), pp. 787, 788, sec. 337.

And in Corpus Juris Secundum:

". . . one who relies on an exception to a general rule or statute has the burden of proving that the case falls within the exception, unless the nonexistence of the exception is made a condition of the application of the rule." [11]

In speaking of criminal statutes, C. J. S. states:

"In general, accused has the burden of proving, as a matter of defense, that he is within an exception in the statute creating the offense, at least, where such exception is not part of the enacting clause, but is a proviso thereto, or is in fact not part of the description of the offense, as where the exception is not part of the crime but operates to prevent the act otherwise included in the statute from being a crime. Accordingly, the prosecution owes no duty to prove that accused is not within the exception. Such a statute is a mere rule of procedure and has nothing to do with shifting the burden of proof. Where, however, an exception is part of the enacting clause, or where, whether appearing as an exception or a proviso, its terms are in fact part of the description of the offense, the burden is on the state to prove that accused is not within such exception or proviso, except where the facts to prove such negative are peculiarly within the knowledge of accused, as appears supra sec. 571. It has been stated, however, that the preceding rule cannot be mechanically applied, and the real question is whether the exception is so incorporated with the clause defining the offense that it becomes in fact a part of the description, and such question cannot be determined by the mere position of the exception in the text." [12]

We conclude that the part of sec. 30.12, Stats., dealing with bulkhead lines is not phrased as an exception but rather as part of the description of the violation. Nor is the existence of the line peculiarly within the knowledge of the respondent. In these two particulars the

[11] 31A C. J. S., *Evidence*, p. 173, sec. 104.
[12] 22A C. J. S., *Criminal Law*; pp. 316, 317, sec. 572. *See also:* 29 Am. Jur. 2d, *Evidence*, pp. 185, 186, sec. 154 (criminal statutes).

"bulkhead line" portion of the statute differs from the "permit" portion of the statute, which is phrased as an exception and would be a fact peculiarly within the knowledge of respondent. The exceptions in this particular statute are not numerous.

(b) *Proof of negatives.* The same rule applies with respect to proof of negatives as applies to proof of exceptions: the party asserting the negative has the burden to prove it unless the facts are peculiarly within the other party's knowledge or are much more difficult for the former to prove than the latter.[13]

(5) "the judicial estimate of the probabilities."

"Perhaps a more frequently significant consideration in the fixing of the burdens of proof is the judicial estimate of the probabilities of the situation. The risk of failure of proof may be placed upon the party who contends that the more unusual event has occurred."[14]

In this case the question then becomes whether the existence of a bulkhead line would be such an unusual occurrence as to make it logical to place the burden of proving its existence on the respondent. The natural order of things, of course, would be for no line to exist; however, nothing in the brief indicates how frequently municipalities pass bulkhead line ordinances. If it is to be considered at all, this factor would tend to favor placing the burden on respondent.

We conclude that as the burden of proof should be on the party desiring the change except where it may be much easier for the other party to prove the fact in question, the burden of proving the nonexistence of a bulkhead line on the shore of Mud Lake abutting respondent's property should be left on the state. The burden of proof must also be considered in light of sec. 30.11 (4),

[13] *See* 31A C. J. S., *Evidence*, pp. 181, 182, sec. 105; 29 Am. Jur. 2d, *Evidence*, p. 184, sec. 153 (criminal statutes).

[14] McCormick, *Evidence* (2d ed.), p. 787, sec. 337.

Stats., which preserves for riparian owners the right to fill up to a bulkhead line.

*Any proof of nonexistence of bulkhead line in record?*

The state sees facts indicating the nonexistence of a bulkhead line both in finding of fact No. 8 and in the record. Finding of fact No. 8 reads:

"8. The fill described herein is located on the bed of Mud Lake. No permit has been issued by the Department of Natural Resources or its predecessors authorizing this fill. The fill is an obstruction to navigation, and is detrimental to public interest. The removal of said material from the bed of Mud Lake is necessary to fully protect and effectuate the interests of the public in the said navigable water."

The state argues that the word "permit" means not only a particular license to fill but also statutory authority to do so, including sec. 30.11 (4), Stats., allowing riparian owners to fill to a bulkhead line. In context, however, it is clear that the permit referred to is one issued by the DNR to allow particular fills and not the statutory authorization of sec. 30.11 (4), allowing landowners to fill to bulkhead lines, since no DNR permit would be required if a line existed. However, as the state points out, the important question is not whether the findings of fact contain conclusions as to a bulkhead line but whether the record contains facts regarding it, since, if facts in the record indicate the nonexistence of the line, the circuit court or this court could enforce the order by supplying the finding of fact.[15]

The state also finds facts supporting the nonexistence of a bulkhead line in the following testimony elicited from Richard Knitter:

---

[15] *See, e.g., Dittman v. Nagel* (1969), 43 Wis. 2d 155, 159, 168 N. W. 2d 190; *State ex rel. Skibinski v. Tadych* (1966), 31 Wis. 2d 189, 199, 142 N. W. 2d 838; *Grimh v. Western Fire Ins. Co.* (1958), 5 Wis. 2d 84, 89, 92 N. W. 2d 259 (all dealing with lack of necessary findings in a trial to the court under sec. 270.33, Stats.).

"*Q.* Have you checked the files of the Department and its predecessors in order to determine whether or not Mr. McFarren has any authority or permit for this fill? *A.* Yes, I have.

"*Q.* And what did you find? *A.* That there has been no authority granted by the State of Wisconsin."

The state argues that the latter answer could mean both that no individual permit was granted and that no record of a bulkhead line existed with the department—that "authority" could mean either permit or statutory authority. Without analyzing the question and answer in detail, this part of the record is too vague to constitute substantial evidence on the issue of the existence of a bulkhead line.[16]

Finally, the state argues that respondent failed to raise the objection that there was no proof as to nonexistence of a bulkhead line at the hearing as required by sec. 111.07 (7), Stats., and, therefore, waived it. Only one case has dealt with a waiver for failure to object under sec. 111.07 (7). In *La Crosse Telephone Corp. v. Wisconsin Employment Relations Board*[17] this court held that an objection to election procedures could not be raised initially on appeal but should have been raised with the board. In this case, however, the objection allegedly waived was to an element of the violation. If the burden was on the state to prove nonexistence of a bulkhead line as an element of the offense, this was a burden which could not be waived. It also should be noted that respondent was without counsel at the hearing.

### RECORD OF CRIMINAL PROCEEDING

The circuit court held that the DNR did not properly submit the entire record to it as required by sec. 111.07

---

[16] *See State v. Lamping* (1967), 36 Wis. 2d 328, 342, 153 N. W. 2d 23.

[17] (1947), 251 Wis. 583, 30 N. W. 2d 241.

(7), Stats., because the record of the prior criminal proceeding was not included in that record. As indicated earlier, at the administrative hearing the respondent first moved and later requested that the examiner look into the transcript of the previous trial. Since the state objected, it was improper for the examiner to consider the previous transcript.

Testimony of a former proceeding is hearsay, although an exception exists where the declarant at the previous hearing is unavailable to testify.[18] While administrative proceedings are not bound by the same strict rules of evidence as govern trials[19] this court has held that hearsay evidence not within another exception should not be received at an administrative hearing over objection where direct testimony as to the same facts is available.[20] Absent a showing that the witnesses at the earlier trial were "unavailable" it would have been error for the examiner to consider any prior testimony over the department's objection. It is difficult, too, to understand how he could have examined an untranscribed transcript. Since it would have been improper for the examiner to consider the prior testimony, the circuit court's dismissal of the DNR petition because of an incomplete record was erroneous.

Normally, the error in rejecting the "incomplete" record would be irrelevant in light of the fact that the department failed to carry its burden of proof as to nonexistence of the bulkhead line. However, at the reargument on the petition for enforcement the court stated:

[18] *See* sec. 908.045 (1), Stats. (new rules of evidence—though not applicable at the time of the administrative hearing here, substantially reflect prior law with respect to former testimony).

[19] Sec. 227.10 (1), Stats.

[20] *Outagamie County v. Brooklyn* (1962), 18 Wis. 2d 303, 312, 118 N. W. 2d 201; followed in *Erickson v. ILHR Department* (1970), 49 Wis. 2d 114, 122, 181 N. W. 2d 495; and *Lager v. ILHR Department* (1971), 50 Wis. 2d 651, 660, 661, 185 N. W. 2d 300.

"Ordinarily the Court would exercise its discretion under Section 111.07 (7) to remand this matter to the Department for further proceedings and leave to adduce additional evidence." However, the court decided in its discretion not to do so in part because the state did not meet its obligation "to make a proper record." Since the court mentioned the absence of the criminal record just prior to its statement concerning the state's failure to make a proper record, it apparently based its decision not to remand for further administrative proceedings in part on the erroneous view that the transcript of the criminal proceedings should have been a part of the record.

Strictly speaking, the state does not, on appeal, challenge the circuit court's refusal to remand the case to the department for further hearings as an abuse of discretion. However, it does allege that "the trial court was wholly in error in dismissing the petition on the grounds that the transcript was not included in the record." Since the state did in its petition for reargument move for remand for further taking of evidence and did submit an affidavit purporting to show the nonexistence of any bulkhead line, this case should be remanded to the circuit court for the further remand to the DNR. It must be remembered that the state, in preventing improper and detrimental encroachments on navigable waters, is protecting the public interest in maintaining what this court has labeled one of Wisconsin's most important natural resources.[21]

In *Hixon v. Public Service Comm.*[22] we said:

"There are over 9,000 navigable lakes in Wisconsin covering an area of over 54,000 square miles. A little

[21] *Hixon v. Public Service Comm.* (1966), 32 Wis. 2d 608, 146 N. W. 2d 577.

[22] *Id.* at pages 631, 632. *See also: Just v. Marinette County* (1972), 56 Wis. 2d 7, 18, 201 N. W. 2d 761.

fill here and there may seem to be nothing to become excited about. But one fill, though comparatively inconsequential, may lead to another, and another, and before long a great body of water may be eaten away until it may no longer exist. Our navigable waters are a precious natural heritage; once gone, they disappear forever. Although the legislature has constitutionally permitted some structures and deposits in navigable waters, it permitted them under sec. 30.12 (2) (a), Stats., only if the Public Service Commission found that 'such structure does not materially obstruct navigation . . . and is not detrimental to the public interest.'

"In our opinion the Public Service Commission, in denying appellant's tardy application for a permit, carried out its assigned duty as protector of the overall public interest in maintaining one of Wisconsin's most important natural resources." (This function was transferred to the DNR.)

Here, the DNR is to be given a further chance to submit evidence with respect to the bulkhead line in its effort to carry forward with its "assigned duty as protector of the overall public interest in maintaining one of Wisconsin's most important natural resources."

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this opinion.