L.P. VOIGT, Secretary, Department of Natural Resources
You have requested my opinion regarding the authority granted a riparian under several sections of ch. 30, Stats., including secs. 30.11 (4), 30.12 (1), 30.12 (2), 30.19, 30.20, and 30.205, Stats. Your letter stated that:
 "A township wishes to receive blanket authority for the removal of organic sediment and aquatic vegetation along the shore of Green Bay. It has requested that the Department of Natural Resources approve the establishment of a bulkhead line pursuant to Wis. Stat. 30.11.
 "Wis. Stats. 30.11 (4) and 30.12 (1) authorize a riparian owner to place solid structures or fill up to the duly established bulkhead line without obtaining a permit pursuant to section 30.12 (2). However, can other work normally requiring DNR permits under various provisions of Chapter 30, Wis. Stats., be performed by a riparian owner in the area between the original ordinary high water mark and the bulkhead line without receiving permits from the Department?"
You specifically ask the following questions, all of which relate to that area landward of the bulkhead line and lakeward of the original ordinary high water mark:
 "1. Must the riparian owner obtain a contract or permit pursuant to Wis. Stat. 30.20 prior to removing material from the bed of any navigable water landward from the bulkhead line?
 "2. Must the riparian owner obtain a permit pursuant to Wis. Stat. 30.12 (2) (b) prior to the placing of a sand blanket landward from the bulkhead line?
 "3. What is to be considered the ordinary high water mark for the purposes of determining the applicability of Wis. Stat. 30.19? Would it be:
 "a. The original ordinary high water mark; "b. The edge of the filled area; or, *Page 447 
"c. The established bulkhead line?
 "4. For the limited purposes of removing organic sediment and aquatic vegetation from the shoreline, would it be more appropriate for the township to obtain approval of a zone for the removal of materials pursuant to Wis. Stat. 30.205?"
In order to answer your question, it is necessary to discuss generally the effect of establishing a bulkhead line under sec.30.11, Stats. Section 30.11 (1) permits any municipality to establish a bulkhead line by ordinance along the shore of any navigable water within its boundaries, subject to approval of the Department of Natural Resources (DNR). Section 30.11 (2) sets forth the standards for establishing bulkhead lines. These standards are: (1) they shall be in the public interest, and (2) they shall conform as nearly as practicable to the existing shores. Subsection (2) also contains the exception that in the case of certain leases provided for under sec. 30.11 (5) and sec.24.39 (4), Stats., bulkhead lines may be approved farther from the existing shoreline if they are consistent with and a part of any lease executed by the Board of Commissioners of Public Lands. Subsection (3) contains the procedures whereby a municipality establishes a bulkhead line. Subsection (4) refers to riparian rights and provides as follows:
 "(4) RIPARIAN RIGHTS PRESERVED. Establishment of a bulkhead line shall not abridge the riparian rights of riparian proprietors. Riparian proprietors may place solid structures or fill up to such line."
Subsection (5) concerns the previously referred to leases by the Board of Commissioners of Public Lands. Such leases may be for a term of fifty years under the provisions of sec. 24.39 and, in order to be approved, there must be a finding that the lease is consistent with the public interest. That standard is to be determined, however, by DNR rather than by the Commissioners of Public Lands. Its application is subject to several additional standards set forth in 30.11 (5) which are not directly germane to this opinion.
Section 30.12, Stats., prohibits the placing of material on the bed of a navigable water, without a permit by the DNR, "Where no bulkhead line has been established" (sec. 30.12 (1) (a)) or "beyond a lawfully established bulkhead line" (sec. 30.12 (1) (b)). *Page 448 
Sections 30.11 and 30.12 were created pursuant to ch. 441, Laws of 1959. As originally created, sec. 30.11 did not contain the provisions for leases by the Commission of Public Lands. Subsequent to the enactment of sec. 30.11, my predecessor issued an opinion stating that the establishment of a bulkhead line was equivalent to the establishment of a "shoreline" under the statutes as they existed prior to 1959. 49 OAG 126 (1960). A "shoreline" constituted a determination of the ordinary high water mark for purposes of clearly establishing title as between riparians and the state in situations where the natural ordinary high water mark is not easily determinable. 49 OAG 126 then cited prior opinions to the effect that a shoreline "should not create any substantial new land areas out of what was formerly the bed under the water." 49 OAG at 129. The rationale for the opinion was that the state, under the public trust doctrine, has unqualified title to lakebeds and qualified title to riverbeds, and that "the state cannot transfer, to private interest, property which it holds in trust for the public." Idem.
Subsequent to that opinion, and, apparently in response to it, the legislature enacted ch. 535, Laws of 1961, which created sec.24.39 (4), Stats., and amended sec. 30.11 (2) and (5) to provide for leases by the Commission of Public Lands. They were enacted in the same form, essentially, as the current statutes. Effect of that amendment was discussed briefly in a subsequent opinion dated March 5, 1963. 52 OAG 42.
In December, 1963, the Wisconsin Supreme Court issued a decision involving the same question in the case of Town ofAshwaubenon v. Public Service Commission (1963), 22 Wis.2d 38,125 N.W.2d 577, 126 N.W.2d 567. This case involved an appeal from the denial of a bulkhead line application by the Public Service Commission (PSC), predecessor to the DNR in administering ch. 30 regulations. Ashwaubenon's application involved a bulkhead line extending from 90 to 1,000 feet out from the existing shore, and an area of 137 acres. The Supreme Court held that the PSC could not reject the application solely on the grounds that the line varied greatly in geographical distance from the original shoreline. In a split decision (4 to 3), the majority refused to adopt the reasoning of the prior Attorney General's opinion (49 OAG 126, supra). Rather, the court held that a bulkhead line such as the one in question there could be established without a violation of the trust doctrine: *Page 449 
 ". . . The appellants' argument that the trust doctrine precludes such activities is contradicted by the existence of the statute itself. One does not have to deny either the trust doctrine or the state's paramount title to determine that an intrusion upon the navigable waters is permissible." 22 Wis.2d at 49.
The court specifically held that, with respect to the bed of the navigable water landward of the established bulkhead line, ownership does not pass to the private riparian. Rather, the riparian obtains the limited right to fill the bed landward of the bulkhead line, and to use it exclusively once he has filled it, unless and until the legislature chooses to revoke that right:
 "The respondents do not challenge the paramount title of the state to the riverbed and concede that the legislature may, in the future, revoke the right of the riparian owners to retain structures up to the bulkhead line under sec. 30.11
(4), Stats. 1959. It cannot be denied that the riparian owners have only a qualified title to the bed of the waters. The title of the state is paramount and the rights of others are subject to revocation at the pleasure of the legislature.
 "Nevertheless, a riparian owner, with knowledge of his qualified title and his revocable rights under sec. 30.11, Stats. 1959, by dint of that very statute may enjoy the use of the riverbed up to the established bulkhead line. . . ." 22 Wis.2d at 49.
This definition of a riparian's limited rights under sec. 30.11
was quoted with approval in State v. Mutter (1964), 23 Wis.2d 407,412, 127 N.W.2d 15.
The dissenting justices in the Ashwaubenon case placed a greater emphasis on the legislative standard requiring that bulkhead lines conform as nearly as practicable to the original shoreline. 22 Wis.2d at 54. In a recent decision involving the bulkhead line statutes, State v. McFarren (1974), 62 Wis.2d 492,215 N.W.2d 459, the unanimous opinion was written by Justice Wilkie, one of the three original dissenting justices inAshwaubenon. Although neither the Ashwaubenon case nor the 1960 Attorney General's opinion were mentioned specifically, the opinion indicates that the bulkhead line *Page 450 
statute is to be interpreted to emphasize the requirement that bulkhead lines be established as close to the original ordinary high water mark as practicable. 62 Wis.2d at 497-498.
The court also drew a clear distinction between a bulkhead line, a natural shoreline and the low and high water mark on the shore:
 ". . . Thus, a bulkhead line is not merely the natural shoreline but is a line legislatively established by a municipality which may differ from the existing shore line. A bulkhead line should also be distinguished from the low- and high-water marks on the shore . . ." 62 Wis.2d at 498.
From these two cases, it must be concluded then, that the establishment of a bulkhead line under sec. 30.11 does not grant full title to the bed landward of the line, but only grants a limited right of use of the bed for the placing of fill up to the bulkhead line. Furthermore, that right, even if it is exercised, is revocable by the legislature.
In light of this interpretation of sec. 30.11, the answers to your specific questions are as follows:
 "1. Must the riparian owner obtain a contract or permit pursuant to sec. 30.20 prior to removing material from the bed of any navigable water landward of the bulkhead line?"
The answer is yes. Section 30.11 contains no expression of legislative intent to grant a contract under sec. 30.20 for the removal of materials from the bed landward of the bulkhead line. This is in contrast to the express language in secs. 30.11 and30.12 waiving the requirement for a permit to place fill up to the bulkhead line. Under the Ashwaubenon case, the state control under the Trust Doctrine remains essentially intact except for area filled under the right established by that statute and, even in that area, the state retains the right to revoke the permit.
 "2. Must the riparian owner obtain a permit pursuant to sec. 30.12 (2) (b) prior to the placing of sand landward to the bulkhead line?"
The answer to this question is no. Section 30.12 prohibits structures and deposits without a permit in navigable waters where no bulkhead line has been established. One such permit available *Page 451 
under sec. 30.12 (2) (b) is for the placing of a sand blanket. Section 30.11 (4) grants riparians the right to place solid structures or fill up to a bulkhead line. It is my opinion that "a layer of sand or other similar material" as referred to in sec. 30.12 (b) would come within the more general term "fill" as it is used in 30.11 (4). The two statutes, construed together, clearly show that a riparian has the right to place a sand blanket as well as a solid fill or solid structure up to a bulkhead line where one has been established.
 "3. What is considered to be the ordinary high water mark for purposes of determining the applicability of Wis. Stat. 30.19? Would it be:
 "a. The original ordinary high water mark "b. The edge of the filled area; or, "c. The established bulkhead line?"
The original high water mark will, presumably, be considered the ordinary high water mark for purposes of determining the applicability of sec. 30.19, Stats. This is a presumption, however, and not an absolute rule. Either of the other two suggested alternatives might be appropriate under particular fact circumstances. For example, in some cases bulkhead lines are established in areas where the natural ordinary high water mark is difficult or impossible to determine. In such cases they serve the place of the established shoreline under the old shoreline statute. 49 OAG 126 (1960); State v. McFarren, supra. This would be one instance where the facts clearly require that the bulkhead line serve as the ordinary high water mark.
Another circumstance might be where the fill has been placed and maintained for a number of years, after which the riparian creates an enlargement without a permit within five hundred feet of the original high water mark but not within five hundred feet of the edge of the fill. Under the Ashwaubenon case, the state has retained the right to have the fill removed and the original shoreline restored at the original ordinary high water mark. It follows that the state retains the right to regulate the five hundred feet landward of the original high water mark under sec.30.19. There is no express language in sec. 30.11 relinquishing regulation of any portion of the five hundred *Page 452 
foot strip landward of the ordinary high water mark under sec.30.19, nor can it be necessarily implied. Nonetheless, in circumstances such as described above, particularly where the fill has existed for a long time, and where the property has changed hands several times in the meantime, the state may well have relinquished its right to exact the penalty for violation of30.19 because of the lack of notice to the landowner that he is constructing within a regulated area.
Absent specific factual circumstances such as related in the above examples, I believe public policy dictates that the presumption that the ordinary high water mark for purposes of regulation under sec. 30.19 will be the original ordinary high water mark. This would be the broadest construction favoring the protection of the public rights in navigable waters. Such construction is favored if not required. Reuter v. DNR (1969),43 Wis.2d 272, 168 N.W.2d 860; Just v. Marinette County (1972),56 Wis.2d 7, 201 N.W.2d 761. It is also consistent with the decision in State v. McFarren, supra, which clearly distinguished the ordinary high water mark from a bulkhead line established under sec. 30.11.
 "4. For the limited purposes of removing organic sediment and aquatic vegetation from the shoreline, would it be more appropriate for the township to obtain approval of a zone for the removal of materials pursuant to sec. 30.205, Stats?"
The answer to this question is yes. Section 30.205 appears to be tailor made for the instant situation. Section 30.205 (4) states that "this section applies only to outlying waters as defined in s. 29.01." The latter section includes Green Bay within the definition of outlying waters. Thus, clearly, a township could obtain approval for a zone of removal under 30.205
(2) provided, however, that the town is the riparian owner. The statute specifically requires that the application for establishment of a zone of removal must be made by a riparian owner.
RWW:SMS *Page 453