THOMAS E. VAN ROY, District Attorney Sawyer County
You ask whether Sawyer County may sell an eighty acre parcel of county-owned land which contains an ancient trail called the "Namekagon Portage Trail." The trail historically was used by Indians, missionaries and traders as a link between the Chippewa and St. Croix River systems. The trail is about two and one-half miles long, and lies between Lake Windigo and the Namekagon River, just south of Hayward, Wisconsin.
You state that although the trail crosses the above-described property, most of the trail's length crosses property now in private ownership. You state further that the State Highway Commission maintains an historic marker reciting the trail's significance on State Highway 27, south of Hayward, but that the trail has received no other state or federal designation as an historic site. Finally, you state that the trail's path, at least in places, still is visible and is used occasionally by the public.
The precise legal question you ask is whether article IX, section 1 of the Wisconsin Constitution applies to the sale of the described parcel, and, if so, whether the county must reserve to the public perpetual access to the "Namekagon Portage Trail." It is my opinion, for the reasons which follow, that the constitutional section cited does not apply and that the county may sell the parcel without any restriction.
Section 59.07 (1)(C), Stats., permits a county to sell real property "on such terms as the board approves." See, 60 OP. Att'y Gen. 425 (1971); 38 OP. Att'y Gen. 386 (1949); 27 OP. Att'y Gen. 467 (1938); 23 OP. Att'y Gen. 650 (1934). Therefore, the county has authority to sell the described parcel in fee without reserving any rights therein. By the same token, the county has authority to sell the property reserving to the public the right to use the historic trail. Further, article IX, section 1 of the Wisconsin Constitution does *Page 90 
not prevent the county from selling said property on any terms the board approves.
Article IX, section 1 of the Wisconsin Constitution provides:
 Jurisdiction on rivers and lakes; navigable waters. SECTION 1. The state shall have concurrent jurisdiction on all rivers and lakes bordering on this state so far as such rivers or lakes shall form a common boundary to the state and any other state or territory now or hereafter to be formed, and bounded by the same; and the river Mississippi and the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways and forever free, as well to the inhabitants of the state as to the citizens of the United States, without any tax, impost or duty therefor.
Article IX, section 1 of the Wisconsin Constitution was required as a condition of statehood by the Northwest Ordinance of 1787, Art. IV, Act of Congress, July 13, 1787, U.S. Rev. Stats., 2d Ed. 1878, p. 13. The requirement was clearly restated in the Act enabling the territory of Wisconsin to form a constitution and be admitted to the Union. Enabling Act, Act of Congress, Aug. 6, 1846, sec. 3, 9 U.S. Stat. ch. LXXXIV, pp. 56-58.
In Lundberg v. University of Notre Dame, 231 Wis. 187, 195,282 N.W. 70 (1939), the court noted the importance of navigable waters and the portages between them in the northwest territory as follows:
 At that time water transportation by river and lake was not merely an extremely important factor in interstate and foreign commerce but was essential to the maintenance of the great trade in furs and other products of the then nearly unsettled northwest territory. Well-established trade routes existed, and among the most important were those which linked the Mississippi with the Great Lakes and the St. Lawrence. If these routes were obstructed either physically or politically by the imposition of tolls and tariffs, the end of that profitable trade was inevitable. In order to accomplish the legislative purpose, it was necessary not merely to make provisions for the navigable waters themselves, but for such land as would by the processes of hauling render the routes continuous and practicable for commerce, for it is plain enough that the chain of commerce could be as disastrously broken at one point as at another. *Page 91 
Article IX, section 1 of the Wisconsin Constitution imposes a public trust on "navigable waters" and "carrying places" between them. The trust is administered by the state, primarily by the Department of Natural Resources. The state's power is plenary thereunder. Flambeau River L. Co. v. Railroad Comm.,204 Wis. 524, 540, 236 N.W. 671 (1931).
The trust doctrine applicable to "navigable waters" was thoroughly discussed in Muench v. Public Service Comm.,261 Wis. 492, 53 N.W.2d 514 (1952). Stated in its most simple form, the doctrine provides that ownership of beds of navigable lakes lies in the state and ownership of beds of navigable rivers lies with each riparian owner to the river's centerline, but said river is impressed with a trust for public use as long as the river exists as navigable.
A lake or river is navigable if it is able to float a sawlog, skiff or canoe for even short periods during the year. Muench,261 Wis. at 500-01. Public use includes commercial and recreational use. Muench, 261 Wis. at 499-508. The trust applies up to the ordinary high water mark, a point which is established in each case by field procedures requiring objective examination of geologic and biologic indicators on shorelines to establish a numeric elevation. State v. McFarren, 62 Wis.2d 492, 498,215 N.W.2d 459 (1974); Mayer v. Grueber, 29 Wis.2d 168, 173-74,138 N.W.2d 197 (1965); Diana Shooting Club v. Hustings, 156 Wis. 261,272, 145 N.W. 816 (1914).
The trust imposed by article IX, section 1 of the Wisconsin Constitution applies also to "carrying places" or portages, but certain distinctions must be maintained which lead to different conclusions than those cases concerned exclusively with "navigable waters." Lundberg v. University of Notre Dame,231 Wis. at 197-98, discusses the "carrying place" aspect of article IX, section 1 of the Wisconsin Constitution most thoroughly.
The term "carrying place," discussed in Lundberg "refers to portages and trails in the same watershed as well as those between watersheds." Lundberg, 231 Wis. at 195. Lundberg then states the legal distinctions between the terms "carrying place" and "navigable waters" under the trust doctrine (231 Wis. at 197-98):
 There is a material distinction between a carrying place and navigable waters. It is fairly to be inferred that a carrying place exists only in connection with the use of navigable waters as a commercial route. Until there is such use of the navigable waters, *Page 92 
there is no occasion to portage and no established place over which the process of hauling is done. A navigable river or lake exists regardless of Ordinances, and so does its capabilities for navigation. Not so the carrying place, which comes into being only when commercial necessity arises and is located only by use or planning in connection with commercial navigation. Hence, it appears to us that the only carrying places which the act may be claimed specifically to refer to and preserve are those which had been located and were in use as such at the time of the enactment of the Ordinance. It cannot have been intended to deal with specifically and to preserve unlocated portages for the obvious reason that the act would have nothing to operate upon. Whether the Ordinance imposed its burdens upon particular lands then in use as carrying places we do not undertake to decide. It is intimated in Willamette Iron Bridge Co. v. Hatch, 125 U.S. 1, 8 Sup.Ct. 811, 31 L.Ed. 629, that carrying places may be abandoned, and in Huse v. Glover, 119 U.S. 543, 7 Sup. Ct. 313, 30 L.Ed. 487, that the state may in the improvement of navigation, so long as congress does not occupy the field by a law regulating the subject, substitute canals, bridges, or other structures for carrying places. Presumably, either congress or the state may change the location by any lawful means. The legislative purpose was to protect carrying places to insure continuity of commerce along waters, and not to fix permanently the location of any particular carrying place. So long, however, as an established carrying place has not been abandoned, it is within the protection of the Ordinance. To that extent only is a burden incidentally put upon particular land. What has heretofore been said does not mean that a new water route may not be established with its necessary portages. It is intimated in the Economy Case, supra, that should improvements in methods of water transportation or increased cost in other methods of transportation restore the usefulness of old water routes or establish the usefulness of new routes, congress might make the improvements necessary to their use. Where, however, it cannot be shown that a particular chain of rivers and lakes was in use as a commercial route at the time of the enactment of the Ordinance, the existence of a carrying place may not be established by merely identifying some old trail which connects these waters and which might be a convenient portage if a commercial route were established. In such cases, when the chain of waters becomes useful as a route for commercial *Page 93 purposes if supplemented by portages, it is necessary to acquire by gift, purchase, or condemnation the land necessary to the portages. Once purchased or otherwise acquired, such land doubtless becomes a carrying place, and until abandoned either by the federal government or the state in the exercise of their powers to improve navigation, it is protected by the provisions of the Ordinance from obstruction or political interference. It is our conclusion, therefore, that assuming the Ordinance to have imposed some sort of servitude upon property then used for carrying places, it did not and could not do this with respect to land lying between waters which did not then constitute a part of some established commercial route. If carrying places are to come into existence in connection with such waters, they must be acquired by the process of purchase, condemnation, or other such means.
(Emphasis added.)
I can identify no ancient portage which still is used for commercial purposes in connection with navigable waterways. All such portages have been replaced by locks, dams, bridges, tressels, roads or other forms of transport such as truck, railroad or air services. Even the great commercial "carrying places" in Wisconsin history such as those between the Bois Brule and the St. Croix rivers at Solon Springs, and between the Fox and Wisconsin Rivers at Portage, have been abandoned. Under the law, then, such portages have lost the protection of the trust doctrine of article IX, section 1 of the Wisconsin Constitution.Lundberg, 231 Wis. at 197-98.
It is, therefore, my opinion that the "Namekagon Portage Trail" is not impressed with a public trust under article IX, section 1
of the Wisconsin Constitution. Its commercial use probably was abandoned well over 100 years ago, and most of its path now is privately owned.
BCL:JPA *Page 94