IN RE the MARRIAGE OF:

Michelle WOOD, Petitioner-Respondent,

v.

Phillip J. DeHAHN, Respondent-Appellant.

Court of Appeals

*No. 96–3642. Submitted on briefs August 29, 1997.—Decided October 15, 1997.*

(Also reported in 571 N.W.2d 186.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Giulio Fornary* of *Fornary & Fornary* of Racine.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Debra J. Patterson* of *Kasen and Patterson, S.C.* of Wauwatosa.

Before Brown, Nettesheim and Anderson, JJ.

BROWN, J.   Phillip J. DeHahn, a practicing Mormon, appeals the trial court's order denying his request to restrict his former wife, Michelle Wood, a Catholic, from taking their children to Catholic services on Christmas, Easter and Mother's Day. DeHahn notes that our statutes give him, as legal custodian of the children, the right to make all major decisions concerning the children's upbringing, including religion. He further notes that the statutes require the noncustodial parent to act in a manner "consistent" with the legal custodian's choice of religion. DeHahn reads the statutes to therefore give him, not the trial court, the right to decide whether an action by his former spouse is inconsistent with the way he is raising the children regarding religion, and the trial court's job is to enforce his decision unless it is found harmful to the children. We hold, however, that the statutes give the trial court the responsibility to determine the question and affirm.

After DeHahn and Wood were divorced in 1991, DeHahn was awarded sole legal custody of their two

minor children. DeHahn is a member of the Church of Latter Day Saints, commonly referred to as the Mormon church, and is raising the two children as Mormons. Wood, as we stated at the outset, is Catholic. On Christmas, Easter and Mother's Day, Wood took the two children with her to Catholic services. DeHahn objected to Wood bringing the children to a Catholic service and unsuccessfully sought a court order preventing her from doing this in the future.

We begin by noting that DeHahn is correct when he observes that as the parent having sole legal custody, he has the exclusive right to choose the religion for the children. *See* § 767.001(2), (2m), STATS. Furthermore, Wood, as the noncustodial parent, has no right to participate in the choice of religion for the children and her actions must be consistent with the decision made by DeHahn. Section 767.001(2) states in pertinent part:

> "Legal custody" means . . . the right and responsibility to make major decisions concerning the child, except with respect to specified decisions as set forth by the court or the parties in the final judgment or order.

Section 767.001(2m) states in pertinent part:

> "Major decisions" includes, but is not limited to . . . choice of school or religion.

And § 767.001(5) states:

> "Physical placement" means the condition under which a party has the right to have a child physically placed with that party and has the right and responsibility to make, during that placement, routine daily decisions regarding the child's care,

*consistent with major decisions made by a person having legal custody.* [Emphasis added.]

DeHahn reads these statutes to say that the legislature has made the political choice of giving legal custodians such as himself the right to decide whether the actions of the noncustodial parent are inconsistent with the choice of religious upbringing. He argues that the trial court is not competent to decide such questions. He essentially argues that how a legal custodian inculcates his or her children in religion is a subjective, not objective, determination. Thus, as a matter of common sense, a court cannot be competent to decide what actions are consistent or not consistent with a religious choice; the legal custodian makes that call. It is then the trial court's duty to enforce this position. In DeHahn's view, he not only has the power to decide *what* religion the children shall be brought up with, but he also has the *unfettered* right to *manage* that choice absent a showing of harm. DeHahn effectively contends that training young minds is a form of indoctrination and any action by his former wife which he believes to be inconsistent with that training must be enjoined by court order if he so insists.

Deciding whether the statute gives the legal custodian the right to determine what is inconsistent and what is not is a question of statutory interpretation and, therefore, a question of law. *See Lake City Corp. v. City of Mequon,* 207 Wis. 2d 156, 162, 558 N.W.2d 100, 103 (1997). DeHahn recognizes that the issue is one of statutory interpretation. And he concedes that he is unable to find any language in the statute which gives him, and not the court, the right to determine what action is inconsistent with his major life choice. But he

argues that he is also unable to find any authority that gives the court that right either.

As Wood points out, however, there is such legal authority. She correctly cites § 767.01(1), STATS., which gives circuit courts "authority to do all acts . . . necessary and proper" in actions affecting the family. Wood also cites § 767.24(1), STATS., which provides:

> In rendering a judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under § 767.02(1)(e), the court shall make such provisions *as it deems just and reasonable* concerning the legal custody and physical placement of any minor child of the parties, as provided in this section. [Emphasis added.]

We agree, as argued by Wood, that not only does this statutory authority give the court the power to place restrictions on visitation, but the converse is also true; the court has the discretion to decline to place restrictions on visitation. Case law supports this statement. Matters relating to visitation are committed to the discretion of the trial court. *See G.R.S. v. J.R.G.,* 141 Wis. 2d 503, 507, 415 N.W.2d 564, 566 (Ct. App. 1987).

But DeHahn argues that we should not rely upon §§ 767.01(1) and 767.24(1), STATS., because they only speak generally to the court's responsibility and have no relevancy to the question at hand. DeHahn asserts that he initially determines whether the legal custodian has the right to decide what is consistent. Only then do §§ 767.01(1) and 767.24(1) come into play and only for the purpose of fashioning an order that is necessary and reasonable to enforce the legal custodian's determination. And, as we have already stated, it is his apparent view that whether an action is consistent with a major life choice is simply a question of subjec-

tive belief, and, therefore, judges are ill-equipped to review whether the legal custodian's objections are truly valid or real.

We disagree with his analysis. We think the focus is properly upon the words "necessary" as written in § 767.01(1), STATS., and "reasonable" as stated in § 767.24(1), STATS. Judges have traditionally been called upon to determine whether an order by a court is "necessary" and "reasonable" by common law as well as by statute. While the question about whether an action is necessary and reasonable is often incapable of empirical accuracy, it is still the judge's job to assess it. Thus, it is the court's responsibility to determine if the noncustodian's actions are inconsistent such that it is necessary and reasonable to fashion a restrictive order to protect the legal custodian's major life choice. All the terms at issue, "consistent," "necessary" and "reasonable," are part of the same equation and it is the trial court's statutory responsibility to choose among a variety of possible inferences and then choose among a variety of responses. That is the essential hallmark of what we term "judicial discretion."

Here, the children continue to be practicing Mormons. The mother takes the children to church three times a year. There is no evidence that the mother is attempting to teach her children so as to dissuade them from being practicing Mormons. There is no evidence that the children are being subverted. It is not enough that DeHahn disapproves of the children going to a church that is not of his faith. He must convince the court that the action of going to another church cannot stand together with his authority to choose one religion over another religion. He must show how a restrictive order is reasonably necessary in

order to protect his choice of religion for the children. As the moving party, he has that burden. *See State v. McFarren*, 62 Wis. 2d 492, 499–500, 215 N.W.2d 459, 463–64 (1974). He has failed to meet his burden.

*Lange v. Lange*, 175 Wis. 2d 373, 502 N.W.2d 143 (Ct. App. 1993), is a study in contrast. The mother in *Lange* was the sole legal guardian and her choice of religion was the Lutheran church. The father, who was Catholic, opposed the mother's choice and convinced the children that because their mother was Lutheran, she was going to hell and had effectively caused the children to reject the mother's choice. *See id.* at 381, 502 N.W.2d at 146–47. Moreover, the father had ignored earlier orders to refrain from imposing his religious views on the children, stating that he followed God's orders, not the court's. *See id.* at 382, 502 N.W.2d at 147. The trial court restricted the father's visitation rights in order to protect the mother's choice of religion. *See id.* We upheld the trial court's restriction on the father's visitation rights as a reasonable use of its discretion because the record contained ample evidence supporting a finding that the father was acting inconsistently with the mother's choice. *See id.* at 381–82, 502 N.W.2d at 146–47. The court wrote that because it was the father's intent to impose his choice of religion on the children, he was thereby subverting the mother's choice. *See id.* at 382, 502 N.W.2d at 147.

We do not have those facts here. The court made a "reasonableness" determination that going to a church service three times a year was not contrary to the children's religious upbringing in the Mormon faith. We are comfortable with the court's judgment and hold that there was no misuse of discretion.

*By the Court.*—Order affirmed.