STATE of Wisconsin, Plaintiff-Respondent,

v.

Carol BUELOW, Defendant-Appellant.†

STATE of Wisconsin, Plaintiff-Respondent,

v.

Ralph BUELOW, Defendant-Appellant.†

Court of Appeals

*Nos. 84–530–CR, 84–531–CR. Submitted on briefs November 20, 1984.—Decided December 26, 1984.*
(Also reported in 363 N.W.2d 255.)

† Petition to review dismissed.

466

For the defendant-appellant, the cause was submitted on the brief of *John Schiro, Turner & Pogodzinski, S.C.,* of Milwaukee.

For the plaintiff-respondent, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Marguerite M. Moeller,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   The defendants, Ralph and Carol Buelow, appeal their judgments of conviction of being parties to the crime of arson.  The Buelows claim they were denied their right to counsel because of the trial court's finding that they were not indigent and could not have public defender representation.  The Buelows assert that it is the public defender and/or the prosecution who carries the burden of establishing nonindigency and that the evidence introduced was insufficient to establish non-

indigency. We disagree. The burden of proof to establish indigency is on the defendant who seeks appointed counsel. As the trial court's finding of nonindigency is not clearly erroneous, we affirm. Other issues raised will also be discussed.

The Buelows were charged with being parties to the crime of arson in violation of secs. 943.02 (1), Stats., and 939.05 (2) (b), Stats. These charges resulted from the destruction by fire of a Department of Natural Resources building in Fond du Lac county. The Buelows were represented by private counsel through the arraignment. On September 9, 1981, the privately retained attorneys requested permission to withdraw from the case due to the Buelows' inability to pay. The request was granted, and the matter was referred to the public defender's office.

Subsequently, an attorney from the public defender's office notified the court that the Buelows had been found to be not indigent. The public defender's office determined that a trust into which all of the Buelows' assets had been transferred was invalid. A hearing was held for judicial review of the indigency determination, and the court upheld the public defender's determination. The Buelows were not represented by counsel at trial.

We must initially determine what kind of proceeding an indigency hearing is. In other words, is it an independent proceeding where no burden of proof is assigned and the determination is discretionary with the trial court or is it something more structured? The only instruction from our state court comes from *State ex rel. Barth v. Burke,* 24 Wis. 2d 82, 86, 128 N.W.2d 422, 424–25 (1964), where the supreme court held that:

The trial court's inquiry into his indigency was at best cursory, for upon eliciting the information that he had some undefined interest in property worth about $1,500, and subject to about $500 in encumbrances, the court

found him to be not a pauper. Upon the record in the instant action the trial court's finding that Barth was not indigent was arbitrary and was made upon an inadequate determination of the facts.

■

Wisconsin joins almost every other state in decreeing that a trial court's decision regarding indigency must be supported by facts of record. As explained, however, by the New Mexico Supreme Court in *State v. Anaya*, 417 P.2d 58, 61 (N.M. 1966), "[t]his does not require an independent inquiry by the court. It does require sufficient questioning by the court to enable the court either to decide the question of indigency at that time or to direct that defendant is to report further to the court on the question of obtaining counsel. . . . [However,] [t]he burden of proceeding rests first upon the defendant." *Anaya* held that whether a defendant has the financial means to procure counsel is a question of fact. *Id.* at 60. We agree with that determination.[1]

■

We also agree, as have a vast majority of courts across the country, that the burden of proceeding rests upon the defendant.[2] Our confirmation of this position comes not

---

[1] The criteria for establishing indigency is now clearly set forth in Wis. Adm. Code, ch. SPD 3. A person is eligible for public counsel if the anticipated cost of retaining counsel exceeds the person's available assets. Sec. SPD 3.01. The public defender's office analyzes the defendant's assets in light of specific criteria outlined in sec. SPD 3.03 and submits a report to the court. The court, pursuant to sec. 977.07(3), Stats., may review the finding of the public defender's office. That finding will not be overturned on appeal unless it is clearly erroneous. *See United States v. Harris*, 707 F.2d 653, 660 (2d Cir.), *cert. denied*, —— U.S. ——, 104 S. Ct. 495, 78 L. 7d. 2d 688 (1983).

[2] *See Harris*, 707 F.2d at 660; *United States v. Ellsworth*, 547 F.2d 1096, 1098 (9th Cir. 1976), *cert. denied*. 431 U.S. 931 (1977); *see also State v. Byrnes*, 404 A.2d 495, 498 (R.I. 1979) (burden of establishing indigency on defendant for receiving trial tran-

only from the persuasive authority of other jurisdictions but from our own independent analysis. In determining which party has the burden of proof, Wisconsin courts have used the five-factor analysis outlined in McCormick, *Evidence* §337 at 788–89 (2d ed. 1972), and adopted in *State v. McFarren,* 62 Wis. 2d 492, 499–503, 215 N.W.2d 459, 463–65 (1974). *See also State v. Hanson,* 98 Wis. 2d 80, 85–90, 295 N.W.2d 209, 213–15 (Ct. App. 1980), *aff'd* 100 Wis. 2d 549, 302 N.W. 2d 452 (1981). These five factors are: (1) the natural tendency to place the burdens on the party desiring change; (2) convenience; (3) fairness factors; (4) judicial estimate of probabilities, and (5) special policy considerations. *Hanson,* 98 Wis. 2d at 85–90, 295 N.W.2d at 213–15.

All of the above factors point to placing the burden of proof on the party seeking appointed counsel. First, it is the defendant who is seeking the benefit of appointed counsel. As the party desiring these free services, it would seem appropriate that he or she carry both the burden of going forward and the burden of persuasion. *See McFarren* at 499–500, 215 N.W.2d at 463–64. Second, the defendant possesses all of the material proof regarding his or her wealth. Third, because the defendant is

script at state expense); *Gresham v. Page,* 411 P.2d 251, 255 (Okla. Crim. App. 1966) (right to appeal in forma pauperis); *Carrell v. Carrell,* 503 S.W.2d 48, 51 (Mo. Ct. App. 1973) (burden of proving indigency in divorce proceeding); *Charles v. State,* 510 S.W.2d 68, 70 (Ark. 1974) (failure to make bond because of indigency); *State v. Anaya,* 417 P.2d 58, 61 (N.M. 1966); *People v. Kanouse,* 350 N.W.2d 760, 761 (Mich. Ct. App. 1984); *State v. Hudson,* 228 A.2d 132, 135 (Conn. 1967); *Commonwealth ex rel. Parrish v. Cliff,* 304 A.2d 158, 161 (Pa. 1973); *Commonwealth v. Holm,* 335 A.2d 713, 717 (Pa. Super. Ct. 1975) (failure to pay costs of prosecution because of indigency); *State v. Thompson,* 253 N.W.2d 608, 610 (Iowa 1977).

alleging a *lack* of funds, "the party asserting the negative has the burden to prove it unless the facts are peculiarly within the other party's knowledge or are much more difficult for the former to prove than the latter." *Id.* at 503, 215 N.W.2d at 465 (footnote omitted). Again, it is the defendant who possesses the facts necessary to explain why he or she is unable to retain private counsel. Fourth, generally it is the party who contends that the more unusual event has occurred who bears the burden of proof. *Id.* Here, the usual event is for a litigant to hire his or her own counsel; it is the exception, limited to criminal cases, for a litigant to request appointed counsel. Although a criminal defendant has a right to obtain appointed counsel, that right exists only if the defendant cannot afford one. Finally, public policy dictates that a litigant who wishes an attorney at public expense should prove that the expense is necessary. Therefore, we conclude that in order to sustain a claim of indigency, the defendant must prove by a preponderance of the evidence that he or she is financially unable to afford counsel. *See United States v. Harris,* 707 F.2d 653, 661 (2d Cir.), *cert. denied,* —— U.S. ——, 104 S. Ct. 495, 78 L. Ed. 2d 688 (1983).

The record supports the trial court's finding that the Buelows failed to show they were financially unable to retain counsel. The attorney from the public defender's office stated that records were examined in the Calumet County Register of Deeds office and the Treasurer's office. Also examined was the trust indenture creating the Buelow Farm Trust. The office determined that the trust could be invaded for the Buelows to receive trust assets. There was also testimony that the Buelows had "borrowed" money from the trust for a Florida vacation. The trial court, after hearing this report, set a hearing date for judicial review of the indigency determination

and told the Buelows that they would be required to present specific trust documentation at that time.

On the date of the hearing, the Buelows informed the court that the trustees had voted not to reveal any trust tax returns. It was discovered that there are only two trustees—Carol Buelow and her daughter Bonnie Casper. After an extensive examination of Mrs. Buelow concerning the operation of the trust, the trial court held that the Buelows were the owners of sufficient assets to obtain private counsel and that, therefore, they did not qualify for public defender representation.[3] As the record shows that the Buelows had funds available to retain counsel, they were not denied their right to counsel. By proceeding pro se, they waived the right to be represented by counsel at trial.

The Buelows next raise a confrontation of witness argument. Ms. Honey Lou Suttner, the state's primary witness, had given testimony at the John Doe hearing implicating herself, the Buelows and Harlee Suttner in the arson fire of the Department of Natural Resources building in Fond du Lac county. She had also given a similar statement to a police officer. She explained at the John Doe hearing that they chose the DNR building because the Buelows and Harlee Suttner, as members of the Posse Comitatus, "don't like the DNR."

---

[3] There is some indication in the record that the trust was created to avoid tax liability on the operation of the 600 acre farm. If so, our determination is reinforced by a Second Circuit Court of Appeals decision stating:

[A] defendant's claim of indigency certainly should be rejected when he puts his own assets into his relatives' names and those assets remain at his disposal. Here the evidence clearly established that Rubinson owned or controlled substantial assets. To the extent that the assets were not in his own name, he had them put in the names of other members of his family to conceal them from his creditors, the government and the court.

*United States v. Rubinson*, 543 F.2d 951, 964 (2d Cir.), *cert. denied sub nom. Chester v. United States*, 429 U.S. 850 (1976).

At the joint arson trial, the state called Honey Lou Suttner to the stand. Ms. Suttner refused to testify on fifth amendment grounds, after which the state granted her immunity from prosecution. The trial court then ordered her to testify, but Ms. Suttner persisted in her refusal. The trial court found Ms. Suttner in willful contempt of court. It then found the witness to be unavailable and admitted her John Doe testimony and police statement under sec. 908.045(4), Stats.—statements against interest. The Buelows claim the admission of this evidence was improper both on evidentiary and constitutional grounds. We disagree.

In order to address the Buelows' contentions, we must analyze the admissibility of the evidence under both the hearsay rules and the confrontation clause. "[C]ourts have repeatedly held that hearsay rules are not to be equated with confrontation and that admissibility under hearsay rules will not guarantee admissibility under the confrontation clause." *State v. Marshall,* 113 Wis. 2d 643, 652, 335 N.W.2d 612, 616 (1983).

1. Hearsay Exception: declarant unavailable.

It is undisputed that Honey Lou Suttner refused to testify at the Buelows' trial. Section 908.045 of the Wisconsin Statutes allows the introduction of certain evidence if the declarant is unavailable as a witness. Section 908.04 defines unavailability to be:

(1) "Unavailability as a witness" includes situations in which the declarant:

. . . .

(b) Persists in refusing to testify concerning the subject matter of his statement despite an order of the judge to do so . . . .

Unavailability is a mixed question of law and fact.[4]

---

[4] The state argues that the question of unavailability is a discretionary determination citing, *inter alia, State v. Burns,* 112

*State v. Gollon,* 115 Wis. 2d 592, 600, 340 N.W.2d 912, 916 (Ct. App. 1983). When mixed questions are presented, the court must determine two matters: (1) what happened, and (2) whether those facts fulfill a particular legal standard. *Id.* The second determination is an issue of law. *Id.*

It is clear that Honey Lou Suttner refused to testify in court and persisted in her refusal despite a court order to testify. That finding of fact is undisputed. It is also clear that the finding meets the legal definition of unavailability stated in sec. 908.04(1)(b), Stats.[5] *See State v. Sharlow,* 110 Wis. 2d 226, 235, 327 N.W.2d 692,

Wis. 2d 131, 139, 332 N.W.2d 757, 762 (1983), and *LaBarge v. State,* 74 Wis. 2d 327, 338–39, 246 N.W.2d 794, 799 (1976). However, these cases clearly state that it is the trial court's decision on the admissibility of the former testimony which is a matter of discretion.

[5] *See United States v. Robinson,* 635 F.2d 363, 364 (5th Cir), *cert. denied,* 452 U.S. 916 (1981); *United States v. Gonzalez,* 559 F.2d 1271, 1272–73 (5th Cir. 1977); *United States v. Carlson,* 547 F.2d 1346, 1354 (8th Cir. 1976), *cert. denied,* 431 U.S. 914 (1977); *State v. Smith,* 415 A.2d 553, 559 (Maine 1980); *State v. Olsen,* 258 N.W.2d 898, 903 n. 2 (Minn. 1977); *State v. Maestas,* 584 P.2d 182, 188–89 (N.M. Ct. App. 1978).

*Cf. State v. Lenarchick,* 74 Wis. 2d 425, 434–36, 247 N.W.2d 80, 86–87 (1976), where, on evidentiary and constitutional challenges, the supreme court held the witnesses' selective loss of memory on the witness stand met the requirement of being "subject to cross-examination." The court further held that if a witness denies recollection of the prior statement and the trial court has reason to doubt the good faith of such denial, it may in its discretion declare such testimony inconsistent and permit the prior statement's admission into evidence. *Lenarchick* is distinguishable from the present case in that the circumstances indicated defense counsel carefully avoided cross-examination on issues that were potentially harmful to the defendant. *Id.* at 444, 247 N.W.2d at 90–91. *See also Virgil v. State,* 84 Wis. 2d 166, 187, 267 N.W.2d 852, 863 (1978).

697 (1983). Therefore, the prong of unavailability has been met.

The second factor to be determined, therefore, is whether the hearsay is admissible under one of the exceptions ennunciated in sec. 908.045, Stats. The trial court found both of the statements admissible under sec. 908.045 (4) which allows admission of a statement "which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest . . . that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true."

The decision of the trial court concerning the admissibility of hearsay evidence rests within its sound discretion. *State v. Pepin,* 110 Wis. 2d 431, 435, 328 N.W. 2d 898, 900 (Ct. App. 1982). This discretionary determination will not be reversed unless it is abused or based upon an erroneous view of the law. *Christensen v. Economy Fire & Casualty Co.,* 77 Wis. 2d 50, 55, 252 N.W.2d 81, 84 (1977).

In examining the statement made by Ms. Suttner at the John Doe investigation, we hold this testimony is admissible as a statement against interest under sec. 908.-045 (4), Stats. The John Doe testimony was made under oath and recounted her participation in several crimes, including accompanying another who placed a firebomb in the mailbox of a judge. The statements linked Ms. Suttner with the arson and other criminal activity. At that time, Ms. Suttner had not been granted immunity from prosecution for giving this testimony. Ms. Suttner's statements about the Buelows' involvement in the arson is so closely connected with Ms. Suttner's declaration against interest that both are equally trustworthy. *See*

*Meyer v. Mutual Service Casualty Insurance Co.*, 13 Wis. 2d 156, 164–65, 108 N.W.2d 278, 282 (1961).

We next turn to the police statement given by Ms. Suttner. The statement made by Ms. Suttner describes in vivid detail the events leading up to the arson and clearly admitted active participation in those activities. Further, the statement revealed that Ms. Suttner voluntarily came to the sheriff's department. An officer picked her up in an area away from her home "so her children would not be aware she was coming . . . to Fond du Lac." The testimony reveals that Ms. Suttner returned to the sheriff's department eight days later, read the written transcript of the statement, made minor changes, initialed those changes and signed the statement.

The circumstantial guaranty of reliability for the exception against interest is the assumption that persons do not make statements which are damaging to themselves unless satisfied for good reason that they are true. Notes of Advisory Committee on Proposed Rules, 28 U.S.C. Rule 804 (b) (3) (1982).

Ms. Suttner gave statements which would make her the object of hatred and quite possibly would subject her to danger from others involved in Posse Comitatus activity. We are convinced that this type of damaging statement would probably not have been made unless true. Therefore, we hold that the trial court did not abuse its discretion in admitting this statement.

2. Confrontation Clause

Having held that the statements fall within a recognized hearsay exception, we next consider whether the Buelows' constitutional rights to confront Ms. Suttner were violated. *See State v. Bauer*, 109 Wis. 2d 204, 210, 325 N.W.2d 857, 860 (1982). As previously stated, com-

pliance with a hearsay rule does not necessarily insure compliance with the defendants' confrontation rights. *State v. Lenarchick,* 74 Wis. 2d 425, 433, 247 N.W.2d 80, 85 (1976).

To satisfy the confrontation clause, the United States Supreme Court established a two-step approach in *Ohio v. Roberts,* 448 U.S. 56 (1980). First, the prosecution must "either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." *Gollon* at 600, 340 N.W.2d at 916, *quoting Roberts* at 65. The second step involves a showing that the statement bears sufficient indicia of reliability. *Gollon* at 600, 340 N.W.2d at 916. In order to support a finding of unavailability, the prosecutor must make a good faith effort to produce the witness for trial. *Id.*

The record indicates that the state did make a good faith effort to compel Ms. Suttner's testimony. Ms. Suttner was present at the trial. She took the witness stand. She was granted prosecutorial immunity for her testimony. She simply refused to testify.

The Buelows assert that the trial court should have adjourned the trial so the witness would have had time to consult with a lawyer on the penalties for refusing to comply with the court's order. We have found no case law to support this contention. Further, the transcript shows that the court explained and that the witness understood the potential consequences of her actions. "The law does not require the doing of a futile act. . . . The lengths to which the prosecution must go . . . is a question of reasonableness." *Roberts* at 74, *quoting in part California v. Green,* 399 U.S. 149, 189 n. 22 (1970) (Harlan, J., concurring).

Second, in order to find the admission of such testimony to be constitutionally valid, the evidence must bear

adequate indicia of reliability. "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Roberts* at 66. Otherwise, the evidence must be excluded unless there is a showing of particularized guarantees of trustworthiness.

It has been previously established that a statement against interest is a "firmly-rooted" hearsay exception. *State v. Dorcey,* 98 Wis. 2d 718, 722, 298 N.W.2d 213, 216 (Ct. App. 1980), *aff'd* 103 Wis. 2d 152, 307 N.W.2d 612 (1981).

When the evidence fits within a firmly-rooted hearsay exception, reliability can be inferred and the evidence is generally admissible. *Bauer,* 109 Wis. 2d at 215, 325 N.W.2d at 863. While the inference of reliability is strong, the court must still examine each case to determine whether there are unusual circumstances which warrant exclusion of the evidence. *State v. Curbello-Rodriguez,* 119 Wis. 2d 414, 430, 351 N.W.2d 758, 766 (Ct. App. 1984).

The John Doe testimony also bears sufficient particularized guarantees of trustworthiness. Although the testimony was not subjected to cross-examination, it was given under oath, and the witness was not given any favors for her testimony. The statement came entirely from her personal knowledge of the event and implicated her in several different crimes. Finally, the testimony is consistent with her earlier statement given to the police officers.

All of the above factors were present when Ms. Suttner's John Doe testimony was taken; the Buelows have not given sufficient reasons to rebut the inference of reliability. Therefore, the trial court did not err in admitting the testimony.

Finally, we must consider the possible constitutional infringement of admitting Ms. Suttner's extrajudicial statements into evidence. We must determine, therefore, whether this statement also carries "particularized guarantees of trustworthiness." The supreme court's decision of *State v. Olson*, 75 Wis. 2d 575, 589–91, 250 N.W.2d 12, 19–20 (1977), recites many factors to show whether the evidence meets the trustworthiness factor. Among these are:

whether the evidence has high standards of assurance of reliability or trustworthiness; whether the evidence is admissible under an exception to the hearsay rule; whether the statements introduced are subject to divergent views; whether there is high probability of assurance that the cross-examination of the witness would not cast any doubts on the admitted statements; whether the defendant's objection to the evidence was raised via other testimony during the trial; whether the defendant had been afforded prior opportunities for cross-examination of the witness; whether the evidence is collateral or probative of an element of the crime; [and] whether the evidence ties the defendant directly to the crime. [Footnotes omitted.] *Id.*

Ms. Suttner's testimony does carry high assurances of trustworthiness; she came to the sheriff's department voluntarily, knowing the risks she was taking and gave a detailed account of the arson. Her statement included a specific description of the interior of the building, a fact she would not have known unless she was present during the break-in. We have already held the statement to be admissible under a hearsay exception. The statement she gave is consistent with her John Doe testimony and, according to the complaint, coincides exactly with the conclusions drawn by the state officials' reports and investigative data on how the fire was started—a correlation that would be difficult to refute on cross-examina-

tion. Finally, the evidence is both probative of an element of the crime and directly ties the Buelows to the commission of the crime. We, therefore, hold the admitted statement does not violate the Buelows' constitutional right of confrontation.

*By the Court.*—Judgments affirmed.