## COMMONWEALTH vs. DIANE E. PORTER & another.[1]

Middlesex. March 5, 2012. - July 13, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Practice, Criminal,* Assistance of counsel, Presumptions and burden of proof. *Constitutional Law,* Assistance of counsel.

Discussion of S.J.C. Rule 3:10 and G. L. c. 211D, which protect the right of indigent defendants charged with serious crimes to have counsel appointed at public expense. [727-729]

This court concluded that, in proceedings to determine whether a criminal defendant seeking appointment of counsel at public expense is indigent, the defendant bears the burden of proving indigency by a preponderance of the evidence. [730-734]

This court concluded that S.J.C. Rule 3:10, § 1 (b) (ii), which allows, in proceedings to determine whether a criminal defendant seeking appointment of counsel at public expense is indigent, the income of a criminal defendant's spouse to be attributed to the defendant if that spouse resides with the defendant and contributes substantially toward the household's basic living expenses, does not violate the defendant's constitutional rights, where the rule merely creates an evidentiary presumption, which is rebuttable, to assist in determining the defendant's eligibility for appointed counsel at public expense; where there is a rational connection between one's status as a spouse of a defendant and one's willingness to pay for that defendant's counsel; and where, in the instant case, there was nothing in the record suggesting that the evidentiary presumption was used as a guise for depriving an indigent defendant of the right to appointed counsel. [734-736]

INDICTMENTS found and returned in the Superior Court Department on May 18, 2010.

A question of law was reported by *Elizabeth M. Fahey,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Brad P. Bennion* for the defendant.

*Daniel P. Sullivan,* Special Assistant Attorney General, for the intervener.

---

[1] Administrative Office of the Trial Court, intervener.

Spina, J. Following her indictment in May, 2010, on ninety-three counts of failure to pay wages timely, in violation of G. L. c. 149, § 148, the defendant filed an affidavit of indigency and sought appointment of counsel at public expense. In accordance with G. L. c. 211D, § 2 ½ (*a*),[2] the probation department interviewed the defendant in order to verify her claim of indigency. After reviewing the defendant's financial information, which showed that the defendant and her husband together had an annual income of approximately $60,000 and owned three properties, the probation department recommended the defendant be found "not indigent," pursuant to S.J.C. Rule 3:10, as amended, 416 Mass. 1306 (1993) (rule 3:10). A judge in the Superior Court held three hearings on the matter, at which the defendant appeared without counsel. The defendant argued that she had little to no discretionary income and that two of the properties were subject to mortgages and tax liens, hindering their conversion to cash. The defendant did not present evidence tending to show that the properties were illiquid and relied instead on oral statements to the judge and records discovered by the probation department. Reasoning that "[t]he defendant has the burden of proof of her indigency," the judge found the defendant "not indigent." The judge also certified the correctness of her decision to the Appeals Court. Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004). We granted the defendant's application for direct appellate review and scheduled this case for argument with *Commonwealth* v. *Fico, post* 737 (2012), and *Commonwealth* v. *Mortimer, post* 749 (2012). We now hold that a criminal defendant who seeks to have counsel appointed at public expense bears the burden of proving indigency by a preponderance of the evidence. We also reject a challenge by the defendant as to the constitutionality of rule 3:10, § 1 (b) (ii).

1. *Background.* We recite the facts found by the judge regarding the defendant's financial situation, supplemented as necessary with other uncontested facts from the record. See *81 Spooner Rd., LLC* v. *Zoning Bd. of Appeals of Brookline*, 461 Mass. 692,

---

[2]The statute in effect at the time of the hearings in this case was G. L. c. 211D, § 2 ½. In 2011, that statute was repealed and replaced by G. L. c. 211D, § 2A. St. 2011, c. 68, §§ 112, 221. The two versions do not differ in any respect material to this opinion. Despite the repeal of § 2 ½, we refer to it in the present tense for convenience.

693 (2012). The defendant served as president and treasurer of Excel Home Care, Inc., in Tewksbury. In May, 2010, she was indicted on ninety-three counts of failing to pay her employees timely, G. L. c. 149, § 148, during the period from March 29 to August 15, 2009. On July 14, 2010, the defendant was arraigned; at that time, she filed an affidavit of indigency with the court, see G. L. c. 261, § 27B, and was interviewed by the probation department, see G. L. c. 211D, § 2 1/2 (*a*).[3] The defendant initially was appointed counsel on the mistaken belief that she received supplemental security income. See rule 3:10, § 1 (f) (i). When the error was discovered, the judge asked that she complete the "long form" financial statement.

On September 8, 16, and 30, 2010, the judge held hearings on the defendant's indigency status at which the defendant appeared without counsel. Two aspects of our rule on indigency, rule 3:10,[4] played an important role in the proceedings. First, rule 3:10, § 1 (b) (ii), allows the "liquid assets and disposable net monthly income"[5] of a defendant's spouse to be attributed to the defendant if the spouse resides with the defendant and "contributes substantially toward the household's basic living expenses." See note 16, *infra.* Here, the "long form" financial statement disclosed that, if aggregated, the monthly income of the defendant and her husband would be $5,189 per month, or $62,268 per year. This income consisted of monthly Social Security checks collected by the defendant, a monthly pension collected by her husband, and monthly checks from a rental property owned by her husband.

Second, rule 3:10, § 1 (h), defines "[l]iquid [a]ssets" as including "equity in real estate . . . provided that [the equity] is reasonably convertible to cash." Accordingly, at the hearings

---

[3]Although the record does not disclose that the defendant signed the waiver required by G. L. c. 211D, § 2 1/2 (*a*), which authorizes the probation department to obtain the defendant's financial information, the matter was not raised by the parties and we shall assume such a waiver was signed.

[4]Although our decision today, as well as *Commonwealth* v. *Fico, post* 737, 740 n.9 (2012), and *Commonwealth* v. *Mortimer, post* 749, 752 & n.4 (2012), also decided by this court today, have dealt with criminal defendants, S.J.C. Rule 3:10, as amended, 416 Mass. 1306 (1993) (rule 3:10), also applies to "a juvenile in a delinquency proceeding, and any person, including a juvenile, in a civil matter in which the person has a right to counsel." Rule 3:10, § 1 (i).

[5]Income under rule 3:10, § 1 (e), includes unearned income, such as interest and dividends.

the judge inquired about the nature of the properties owned by the defendant and her husband. As to each property, the judge encouraged the defendant to introduce any evidence she had tending to establish the illiquidity of the properties and offered to provide her additional time to do so.

At the time of the hearings, none of the three properties was listed for sale. The first property, the defendant's residence in Tewksbury, was owned jointly by the defendant and her husband. At the hearings, the defendant stated that the property was subject to a mortgage with an eleven per cent interest rate and a remaining principal balance of $37,000. The defendant also stated that the Tewksbury property was subject to State and Federal tax liens, but she did not provide any record of the liens despite the judge's warning that it was her burden to do so. An assistant attorney general eventually was able to locate information on the Web site of the Middlesex County registry of deeds showing a mortgage and several liens on the property.

The second property, in Plymouth, was owned by the defendant's husband. The defendant stated that the property was "no bigger than a garage," and financial records showed that it was worth $190,000 and was subject to a remaining mortgage balance of $123,000. The defendant stated that the Plymouth property was not listed for sale because "[n]othing is selling in that area . . . . And if it went, it would all go back to the . . . mortgage." The defendant also stated that the Plymouth property had been subject to tax liens, but she did not provide evidence of such liens.

The third property was a single-family home in Revere, inherited by the defendant's husband from his mother. The defendant stated that this property was not subject to a mortgage or any other encumbrance. The property was rented to a nonfamily member for $1,500 per month. The judge found that the property was assessed at over $200,000.[6] The defendant stated that she had not listed the Revere property for sale because the rental income was "just helping [them] to live, to pay the expenses on the other mortgages and all."

2. *S.J.C. Rule 3:10 and G. L. c. 211D*. Before discussing the

---

[6]During the hearings, the defendant had placed the property's value at "about $180,000."

judge's ruling, we discuss the applicable law. The right to counsel is a fundamental constitutional right protected by art. 12 of the Massachusetts Declaration of Rights and the Sixth Amendment to the United States Constitution.[7] See *Gideon* v. *Wainwright*, 372 U.S. 335, 342-345 (1963); *Lavallee* v. *Justices in the Hampden Superior Court*, 442 Mass. 228, 234-236 (2004). Encompassed in the guarantee is the right of indigent defendants charged with serious crimes[8] to have counsel appointed at public expense. *Id.* at 234. This right is protected by rule 3:10 and by G. L. c. 211D. See Mass. R. Crim. P. 8, as amended, 397 Mass. 1226 (1986) (directing court to follow rule 3:10 and G. L. c. 211D where defendant charged with crime initially appears in court without counsel); Mass. R. Crim. P. 33, as amended, 397 Mass. 1227 (1986) (directing court to follow rule 3:10 and G. L. c. 211D where defendant determined to be "indigent" or "indigent but able to contribute"). Section 2 ½ (*a*) of G. L. c. 211D requires a criminal defendant claiming indigency to execute a waiver authorizing the probation department to obtain the defendant's financial information. The statute directs the probation department to "ensure that a person claiming to be indigent meets the definition of indigency" by interviewing the defendant and presenting a signed written report to the judge, recommending whether the defendant should be found indigent. *Id.* at § 2 ½ (*b*). See rule 3:10, §§ 4 (a), 8. If the judge finds the defendant indigent and appoints counsel, the probation department must conduct periodic written reassessments of the defendant's financial status. G. L. c. 211D, § 2 ½ (*c*). See rule 3:10, § 7.

Sections 1 and 4 of rule 3:10 govern the judge's indigency assessment. Under rule 3:10, the judge may place the defendant in one of three categories: (1) "indigent," (2) "indigent but able to contribute," and (3) "not indigent." *Id.* at § 4 (a). If the judge finds the defendant indigent or indigent but able to contribute, the judge must appoint counsel. *Id.* at § 5. If the judge finds the defendant not indigent, the judge may nonetheless

---

[7]The right applies at every "critical stage" of the criminal process. See *United States* v. *Wade*, 388 U.S. 218, 224 (1967); *Lavallee* v. *Justices in the Hampden Superior Court*, 442 Mass. 228, 235 (2004).

[8]There is no dispute that the defendant was charged with a crime for which counsel could be appointed. See G. L. c. 149, § 27C.

appoint counsel, provided that she sets forth her reasons for doing so in findings on the record. *Id.* at § 4 (b).

In deciding on the proper classification, the judge must look to the definitions provided in rule 3:10, § 1. Rule 3:10, § 4 (b). Section 1 (f) (ii) of rule 3:10 provides, in relevant part, that a defendant is indigent if she has an annual after-tax income of 125 per cent or less of the "then current poverty threshold" referred to in G. L. c. 261, § 27A (*b*). This is a reference to the poverty guideline published annually in the Federal Register by the United States Department of Health and Human Services.[9] See G. L. c. 261, § 27A (*b*). See also 42 U.S.C. § 9902(2) (2006). At the time of the hearings on the defendant's indigency, the poverty guideline for a family of two was $14,570, 75 Fed. Reg. 45,628, 45,629 (2010), and 125 per cent of that figure was $18,212.50.

Two definitions of "indigent but able to contribute" are found in rule 3:10, § 1 (g). Subsection 1 (g) (i) of rule 3:10 provides that this category includes a party who has an annual after-tax income between 125 per cent and 250 per cent of the poverty guideline. Thus, at the time of the defendant's hearings, a person whose income was between $18,212.50 and $36,425 would have qualified. A second definition of "indigent but able to contribute," provided by rule 3:10, § 1 (g) (ii), includes a party who "is charged with a felony within the jurisdiction of the Superior Court and whose available funds are insufficient to pay the anticipated cost of counsel for the defense of the felony but are sufficient to pay a portion of that cost."

In this case, on October 1, 2010, following the three hearings, the judge issued an order finding the defendant to be not indigent and thus ineligible for court-appointed counsel. The judge reasoned that the defendant was not indigent because her annual income when combined with that of her spouse was approximately $60,000, well above the rule 3:10, § 1 (f) (ii), benchmark of $18,212.50. The defendant also did not meet the definition of "indigent but able to contribute" in rule 3:10, § 1 (g) (i) because her income combined with that of her spouse

---

[9]"[P]overty threshold" is somewhat inaccurate, as it is also a term used to refer to a separate figure published by the United States Census Bureau. To avoid confusion, we use the term "poverty guideline" to refer to the rule 3:10 benchmark.

exceeded $36,425, the upper income limit in that definition. As for the definition provided in rule 3:10, § 1 (g) (ii),[10] the judge found that the defendant had available funds:

> "This [c]ourt accept[s] that finances are tight in [the defendant's] household, given their $60,000 annual income and their need to maintain three properties. These three properties, however, are not on the market. Clearly the home in Revere is entirely available equity . . . ."

The judge therefore found the defendant not indigent, explicitly concluding that she could afford $5,000 to pay for representation.[11] The judge, however, stated that if the defendant could not find counsel for $5,000 within thirty days, she would consider finding the defendant to be "indigent but able to contribute." See rule 3:10, § 4 (b) (discretion to appoint counsel even where defendant does not meet technical definitions provided in rule 3:10, § 1).

3. *Allocation of the burden of proof.* Rule 3:10 does not place the burden of proving indigency on any party, and we have not previously decided the question. The issue is presented squarely here, where the judge explicitly ruled that the burden of proof is on the defendant and resolved the lack of evidence as to liquidity against the defendant. The defendant argues that she bears only an initial burden of production, which is satisfied by submitting the required affidavit and waiver, and that the ultimate burden of proof is on the probation department to prove her non-indigency beyond a reasonable doubt. For the reasons discussed below, we reject this argument and hold that a defendant seeking appointment of counsel at public expense bears the burden of proving indigency by a preponderance of the evidence.

We begin by distinguishing the burden of persuasion from the

---

[10]We note that the judge probably was not required to consider the defendant's indigency under the second definition of rule 3:10, § 1 (g) (ii), as that definition only applies where a defendant "is charged with a felony." The employer wage violation with which the defendant is charged is not a felony. See G. L. c. 149, §§ 27C, 148.

[11]The judge arrived at the $5,000 cost of counsel by referring to rule 3:10, § 1 (a), which defines "[a]nticipated [c]ost of [c]ounsel" with reference to the rates published by the Committee for Public Counsel Services. See Committee for Public Counsel Services, Assigned Counsel Manual c. 5, § 33, at 32 (rev. Nov. 2011).

burden of production. The law has long drawn a distinction between (1) the burden of persuasion, which is the ultimate burden of persuading the fact finder and remains with one party, and (2) the burden of production, which is the burden of producing or "going forward" with evidence and may shift from one party to another. See Mass. G. Evid. §§ 301, 302 (2012); H.J. Alperin, Summary of Basic Law § 10.15, at 24-26 (4th ed. 2007). In indigency determinations, the initial burden of production clearly rests with the defendant, who must initially provide an affidavit and waiver. G. L. c. 211D, § 2 ½. Our decision today, in referencing the defendant's "burden of proof," concerns the burden of persuasion, not of production.

In allocating the burden of proof, the task of an appellate court is essentially to determine which party should "bear the risk of failure of proof." 2 McCormick on Evidence § 337, at 474 (K.S. Broun ed., 6th ed. 2006). In the case at bar, neither party offered proof as to whether the three properties were liquid assets, i.e., assets "reasonably convertible to cash."[12] Rule 3:10, § 1 (h). We must decide who should bear the risk of this failure of proof.

We do not write on a blank slate. A number of State and Federal courts — construing court rules and statutes that, like our own, do not assign the burden of proving indigency — have decided the question presented here. Of these courts, a clear majority has decided that the burden of proof rests with the defendant claiming indigency.[13] See, e.g., *United States* v.

---

[12]As discussed above, as to the Tewksbury property, documentation of a mortgage and several liens on the property was provided by an assistant attorney general, culled from the Middlesex County registry of deeds Web site. However, there was no evidence as to the fair market value of this property, whether it was suitable for a quick sale in the market, or whether a bank would give a $5,000 mortgage loan on the property.

[13]Indeed, we have found only one jurisdiction that appears to follow the defendant's proposed rule. See *McFatridge* v. *State*, 309 S.W.3d 1, 6-7 (Tex. Crim. App. 2010). Otherwise, the cases cited by the defendant are largely more harmful to her position than helpful. See, e.g., *United States* v. *Gravatt*, 868 F.2d 585, 588 (3d Cir. 1989) ("A defendant has the burden of establishing financial eligibility for appointed counsel"); *State* v. *Vincent*, 883 P.2d 278, 285 (Utah 1994) (reversing intermediate appellate court determination of indigency "[b]ecause [the defendant] failed to carry his burden and introduce sufficient evidence to prove his indigency and because the court of appeals erred when it made additional factual findings that were not supported by record evidence").

*Brockman,* 183 F.3d 891, 897 (8th Cir. 1999), cert. denied, 528 U.S. 1080 (2000); *United States* v. *Barcelon,* 833 F.2d 894, 896 (10th Cir. 1987); *United States* v. *Harris,* 707 F.2d 653, 660 (2d Cir.), cert. denied, 464 U.S. 997 (1983); *State* v. *Buelow,* 122 Wis. 2d 465, 470-472 (Ct. App. 1984) (*Buelow*), citing *State* v. *McFarren,* 62 Wis. 2d 492, 499-503 (1974). More recently, our own Appeals Court arrived at the same conclusion. *Commonwealth* v. *Godwin,* 60 Mass. App. Ct. 605, 609-611 (2004). Of these cases, we find the reasoning expressed in *Buelow, supra,* to be particularly instructive. In that case, the Wisconsin Court of Appeals applied five factors generally used in allocating the burden of proof. *Id.* at 471-472, citing McCormick on Evidence § 337, at 788-789 (2d ed. 1972). The factors are "(1) the natural tendency to place the burdens on the party desiring change, (2) special policy considerations such as those disfavoring certain defenses, (3) convenience, (4) fairness, and (5) the judicial estimate of the probabilities." 2 McCormick on Evidence § 337, at 477 (K.S. Broun ed., 6th ed. 2006). As to the first factor, the *Buelow* court concluded that, as the party desiring free services, the defendant should bear the burden of proof. *Buelow, supra* at 471. As to the second factor, the court stated, "[P]ublic policy dictates that a litigant who wishes an attorney at public expense should prove that the expense is necessary." *Id.* at 472. Regarding the convenience and fairness factors, the court concluded that because the defendant is the party in possession of all the material proof regarding her own wealth, and is asserting the negative — lack of funds — she should be required to come forward with proof.[14] *Id.* at 471-472.

We agree with the Wisconsin court's analysis in *Buelow.* We are particularly persuaded by the convenience and fairness factors. A criminal defendant is the party in possession of all material facts regarding her own wealth and is asserting a

---

[14]Writing in 1984, the court in *State* v. *Buelow,* 122 Wis. 2d 465, 471-472 (Ct. App. 1984), also stated that the "usual event" is for a litigant to hire her own counsel, and therefore the "judicial estimate of probabilities" factor weighs against the defendant. Hiring counsel, however, is no longer the "usual event." See generally C. Wolf Harlow, United States Department of Justice, Bureau of Justice Statistics Special Report, Defense Counsel in Criminal Cases (2000). Accordingly, we are not persuaded by this aspect of the court's analysis.

negative. As such, she should be required to bear the risk of failure of proof. This case demonstrates the logic of this conclusion. The defendant's submissions to this court are replete with statements such as: "[i]n all likelihood, [the Plymouth property] would be lucky to sell to cover the mortgage," "[n]o evidence was presented that [the defendant] is a signer on or has any access to what would seem to be [her husband's] bank account," and "[the defendant's husband] was never asked whether he would be willing to contribute to his wife's defense." We find it beyond serious argument that such facts are more easily ascertained by the defendant than by the probation department.

By placing the burden of proof on the defendant, however, we do not suggest that the kind of full-scale inquiry as took place in this case is always necessary or even appropriate. An important consideration is the orderly and timely progression of a criminal case, especially where a defendant is in custody. The appointment of counsel may, in such cases, become particularly time sensitive if an asset that is theoretically liquid cannot be converted to available assets in a reasonably short period of time. See *Commonwealth* v. *Mortimer, post* 749, 759-760 (2012). Judges have a wide range of resources available to them, including the use of assignments, promissory notes, mortgages, and security agreements. We trust that in the vast majority of cases, broad discretion and creativity will give rise to some solution that will protect both the defendant's constitutional right to the assistance of counsel — promptly — and the Commonwealth's interest in a responsibly managed fisc. See rule 3:10, § 4 (b). Here, the judge appears to have kept a watchful eye over the early stages of this case by retaining the option to appoint counsel should that become necessary.

A judge is well advised to appoint counsel earlier rather than later. See rule 3:10, §§ 2 (appointment of counsel on initial appearance), 4 (b) (discretion to appoint counsel). The judge need not have secured payment to the Commonwealth, especially where appointment is made for a defendant whose financial status depends on the income of a parent or spouse whose willingness to contribute is in question. In such cases, an appointment may be made with an order for payment, and the matter may be

referred to the Attorney General or a district attorney to pursue any available civil remedies on behalf of the Commonwealth as creditor for services rendered.[15] See G. L. c. 12, § 5.

4. *Attribution of spousal assets to the defendant.* The defendant also raises a constitutional challenge to rule 3:10, § 1 (b) (ii) (§ 1 [b] [ii]), which allows the income of a defendant's spouse to be attributed to the defendant if that spouse resides with the defendant and "contributes substantially toward the household's basic living expenses."[16] The defendant does not cite any particular constitutional command but generally argues that the rule violates her right to counsel and her due process rights because her spouse is under no legal obligation to pay.

We begin by noting that the United States Supreme Court has thus far declined to define indigency, leaving that task to State Legislatures, the United States Congress, and State and Federal agencies and courts. 3 W.R. LaFave, J.H. Israel, N.J. King, & O.S. Kerr, Criminal Procedure § 11.2(g), at 667-668 (3d ed. 2007). There is thus no Federal constitutional standard against which to measure § 1 (b) (ii). The defendant argues that we should apply a strict scrutiny standard, because the right to counsel is a fundamental right. See generally *Gideon* v. *Wainwright*, 372 U.S. 335 (1963). Under this standard, we would scrutinize § 1 (b) (ii) to ensure that it is necessary to achieve a compelling interest of the Commonwealth. See *Commonwealth* v. *Burgess*, 450 Mass. 366, 376 (2008). Section 1 (b) (ii), however, does not itself operate to deny a party the right to counsel. It merely creates an evidentiary presumption, which is rebuttable, to assist in determining the party's income and eligibility

[15]In other jurisdictions, such remedies are provided by statute. See, e.g., 18 U.S.C. § 3006A(f) (2006); N.J. Stat. Ann. § 2A:158A-14 (West 2012).

[16]Rule 3:10, § 1 (b) (ii) (§ 1 [b] [ii]) states:

"(ii) Certain Assets of Party's Household. A party's available funds shall include the liquid assets and disposable net monthly income of the party's spouse (or person in substantially the same relationship) and each of the party's parents, provided, in each instance, any such person lives in the same residence as the party and contributes substantially toward the household's basic living expenses, unless that other person has an adverse interest in the proceeding (e.g., is the victim, complainant, or petitioning party, is a prospective prosecution witness, or is a party, if it is a civil matter)."

for appointed counsel at public expense. In such circumstances, the appropriate standard is the "rational connection" test for rebuttable presumptions. See *DiLoreto* v. *Fireman's Fund Ins. Co.*, 383 Mass. 243, 248 (1981), quoting *Mobile, Jackson & Kan. City R.R.* v. *Turnipseed*, 219 U.S. 35, 43 (1910). Applying that standard, we conclude that the rule survives constitutional scrutiny.[17]

The "rational connection test" requires:

> "[T]here shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate. So, also, it must not, under guise of regulating the presentation of evidence, operate to preclude the party from the right to present his defense to the main fact thus presumed."

*Mobile, Jackson & Kan. City R.R* v. *Turnipseed, supra.* The test is easily satisfied here. Section 1 (b) (ii) creates a presumption that a spouse or parent who resides with the defendant and contributes substantially to basic living expenses will also contribute to the cost of counsel. The defendant can rebut this presumption by proving, by a preponderance of the evidence, that any one of the § 1 (b) (ii) criteria does not apply or that the spouse or parent is in fact unwilling to contribute.[18] There is certainly a rational connection between one's status as a spouse or parent of a defendant and one's willingness to pay for that defendant's counsel. Indeed, a spouse has a duty to contribute to the cost of necessaries for the support and maintenance of the other spouse. G. L. c. 209, § 1. See *Jordan Marsh Co.* v. *Hedtler*, 238 Mass. 43, 45 (1921), and cases cited. In many cases —

---

[17]We also would uphold the rule under a strict scrutiny standard. The defendant concedes that the Commonwealth has a compelling interest in ensuring that free counsel be provided only to those defendants who truly are indigent. The question becomes whether § 1 (b) (ii) is necessary to achieving that interest. See *Commonwealth* v. *Burgess*, 450 Mass. 366, 376 (2008). An evidentiary presumption is a narrow means indeed for effectuating the Commonwealth's interest, and the defendant proposes no narrower method.

[18]Section 9 of rule 3:10 provides that information obtained during the indigency determination may not be used "in any criminal or civil proceeding against the party except in a prosecution for perjury or contempt committed in providing such information."

including this case, where the alleged crimes involved a business that presumably benefited the defendant's husband — legal fees will qualify as such "necessaries." Cf. *State* v. *Suiter*, 138 Idaho 662, 667-668 (2003) (surveying cases). Although occasionally a spouse or parent meeting the criteria of § 1 (b) (ii) may refuse to pay,[19] this fact does not in itself reduce the presumption to an arbitrary mandate.

Furthermore, we discern nothing in the record suggesting that the presumption was used here "under guise of" depriving the defendant of her right to appointed counsel. *Mobile, Jackson & Kan. City R.R.* v. *Turnipseed, supra*. We express our sternest disapproval of any application of § 1 (b) (ii) as would amount to a guise for depriving an indigent defendant of the right to appointed counsel. This Commonwealth's commitment to the right to counsel, both judicial and legislative, preceded *Gideon* v. *Wainwright, supra*, and has never wavered. See *Commonwealth* v. *Saunders*, 435 Mass. 691, 695 n.5 (2002) (following promulgation of Rule 10 of the General Rules, 337 Mass. 813 [1958], St. 1960, c. 565, § 1, created the Massachusetts Defenders Committee, G. L. c. 221, § 34D, repealed by St. 1983, c. 673, § 3, predecessor to the Committee for Public Counsel Services, G. L. c. 211D, inserted by St. 1983, c. 673, § 1). See generally *Lavallee* v. *Justices in the Hampden Superior Court*, 442 Mass. 228 (2004).

5. *Conclusion.* For the reasons stated, we hold that a defendant seeking appointment of counsel at public expense bears the burden of proving her indigency by a preponderance of the evidence. We further hold that S.J.C. Rule 3:10, § 1 (b) (ii), does not violate any guarantee of the Federal or State Constitution.

The order finding the defendant to be not indigent and thus ineligible for court-appointed counsel is affirmed, and the matter is remanded to the Superior Court for further proceedings and findings consistent with this opinion.

*So ordered.*

---

[19]As previously noted, where there is a legal duty to support, a referral may be made to the Attorney General or a district attorney to pursue any available civil remedies on behalf of the Commonwealth.